IN the MATTER OF the BAR ADMISSION OF Henry Leroy MARTIN.

Supreme Court

*No.  93–1762–BA.  Submitted on briefs November 15, 1993.—Decided February 2, 1994.*

(Also reported in — N.W.2d —.)

For Henry L. Martin there was a brief by *Henry L. Martin,* Glendale, Wisconsin, on his own behalf.

For the Board of Bar Examiners the cause was submitted on the brief of *Burneatta L. Bridge,* assistant

■■■■■■■■■

■■■■■

attorney general, with whom on the brief was *James E. Doyle,* attorney general.

PER CURIAM. *Review of Board of Bar Examiners decision; decision affirmed.*

This is a review, pursuant to SCR 40.08(5),[1] of the decision of the Board of Bar Examiners (Board) declining to certify to this court that Henry Leroy Martin has the necessary character and fitness to qualify him to be licensed to practice law in Wisconsin. Mr. Martin challenged that decision, as well as the Board's refusal to grant his request for a hearing in the matter.

Because we determine that the Board's conclusions that Mr. Martin failed to meet his burden under the bar admission rules to establish the requisite character and fitness to be admitted to the practice of law in Wisconsin are adequately supported by the facts found by the Board and those facts are not clearly erroneous and because the Board was not required to grant Mr. Martin's request for a hearing on his application, we affirm the decision of the Board declining to certify that Mr. Martin has satisfied the requirements for admission to the practice of law in Wisconsin.

Under SCR 40.07, an applicant for bar admission has the burden of proof to establish the qualifications for bar admission set forth in SCR 40.02, including satisfaction of the character and fitness requirement

---

[1] SCR 40.08 provides:

**Adverse determination.**

. . .

(5) A petition to the supreme court for review of an adverse determination of the board under this rule shall be filed with the clerk within 30 days of the date on which written notice thereof was mailed to the applicant.

set forth in SCR 40.06.[2] Pursuant to SCR 40.06(3), the applicant must establish satisfaction of the character and fitness requirement to the satisfaction of the Board, whose duty it is to certify to this court the character and fitness of qualifying applicants.

After Mr. Martin successfully wrote the February, 1989 Wisconsin bar examination, the Board referred his bar admission application to the Board of Attorneys Professional Responsibility (BAPR), pursuant to SCR 22.29(1),[3] for an investigation of his moral character.

---

[2] SCR 40.06 provides:

**Requirement as to character and fitness to practice law.** (1)  An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

(2)  An applicant for admission pursuant to SCR 40.03 shall establish to the satisfaction of the dean of the law school conferring the first professional degree in law that the applicant satisfies the requirement set forth in sub. (1). The dean shall certify to the supreme court the character and fitness of qualifying applicants.

(3)  An applicant for admission pursuant to SCR 40.04 or SCR 40.05 shall establish to the satisfaction of the board that the applicant satisfies the requirement set forth in sub. (1). The board shall certify to the supreme court the character and fitness of qualifying applicants. The board shall decline to certify the character and fitness of an applicant who knowingly makes a materially false statement of material fact or who fails to disclose a fact necessary to correct a misapprehension known by the applicant to have arisen in connection with his or her application.

(4)  The board shall not certify an applicant while an attorney disciplinary matter against the applicant is pending.

[3] SCR 22.29 provides, in pertinent part:

**Procedure for investigation and recommendation.** (1)  The administrator upon request of the board of bar examiners shall investigate the moral character of a person applying for

That referral was made because, in the Board's words, Mr. Martin's file "disclosed serious issues concerning his character and fitness with regard to his extensive criminal record, and with regard to his candor as to his criminal record" when he applied for admission to law school in 1981 and again when he applied for bar admission.

Mr. Martin had applied to write the 1985 Wisconsin bar exam but withdrew his application when it appeared he would not receive his law degree when anticipated. After unsuccessfully writing the bar exams in 1986, 1987 and 1988, he received special permission from the Board to write the February, 1989 exam. The Board sent his application to the BAPR in 1986 and again in 1987 for an investigation and recommendation concerning his moral character. In 1986, the BAPR commenced an investigation but terminated it upon learning that Mr. Martin failed the bar exam. In 1987, the BAPR did not conduct an investigation because Mr. Martin failed the bar exam and in 1988 the Board did not refer his application because Mr. Martin did not pass the examination.

Following the 1989 referral, the BAPR conducted an investigation and, on September 14, 1992, submitted to the Board an unfavorable recommendation. The

admission to the bar. The applicant shall make a full and fair disclosure of all facts and circumstances pertaining to questions involving the moral character of the person. Failure to provide the information or misrepresentation in a disclosure is misconduct and grounds for denial of admission.

(2) The administrator shall report the result of each investigation to the board and make a recommendation for or against the admission of the applicant.

(3) The board shall review the recommendation of the administrator and make its recommendation to the supreme court or the board of bar examiners.

. . .

grounds for that unfavorable recommendation set forth in the Board's decision were the following:

    A.  The pattern of dishonesty which permeated the applicant's extensive criminal record;

    B.  The applicant's lack of candor to the University of Wisconsin Law School in submitting a law school application in which he did not disclose his 1978 federal conviction and his failure to disclose his actual residence at a federal correctional institution at the time he applied to the Law School;

    C.  The applicant's lack of candor in his July 1985 Wisconsin Bar Examination application as evidenced by his omission of references to his prior criminal convictions that were not covered by a gubernatorial pardon; and

    D.  The applicant's failure to honestly explain the circumstances of his convictions to the BAPR during the course of its investigation undertaken pursuant to SCR 22.29.

The Board adopted the BAPR investigative report for purposes of its findings of fact. That report set forth the details of Mr. Martin's criminal record, the relevant facts concerning his 1981 application for admission to the UW Law School, the matter of the pardon granted in respect to Mr. Martin's 1969 conviction of attempted forgery and his 1985 application to write the Wisconsin bar exam.

On his law school application, Mr. Martin set forth a street number in Milwaukee as both his present (mailing) address and his permanent address and listed employment in a family restaurant business in Milwaukee and a tutor position, also in Milwaukee. In fact, however, from 1978 to March 1, 1982, Mr. Martin was incarcerated in a federal prison at Milan, Michigan, having been convicted in federal district court in

Oregon of seven counts of aiding and abetting the interstate transportation of forged checks, for which he was sentenced at the end of February, 1978 to ten years' imprisonment. Prior to filing his application, Mr. Martin had never resided at the address he listed in his law school application; it was a house purchased in 1980 by a woman to whom Mr. Martin was engaged. Further, the tutor position he held was not in Milwaukee but at the federal prison; Mr. Martin told the BAPR investigator the reference to Milwaukee was a typographical error.

Mr. Martin answered the law school application question concerning criminal convictions in the affirmative and, when asked to "fully explain the circumstances," he stated that he was a former legal offender and received "a full Pardon in 1971." He did not report the fact of his 1978 federal criminal conviction, for which he was then currently incarcerated. He also did not set forth any of his four state criminal convictions (robbery, forgery—3 counts, burglary and theft, forgery) that occurred prior to his pardon and to which the pardon did not apply.

After notifying Mr. Martin in March, 1981 that he was accepted for admission, the law school learned of his incarceration when contacted by prison officials to make arrangements for his early release to enable him to attend an orientation session for new students. The law school then rescinded its admission decision on August 4, 1981.

Mr. Martin filed a federal action against the law school, seeking a preliminary injunction and compensatory and punitive damages, claiming he was deprived of due process and equal protection when his admission was rescinded. The district court granted summary judgment to the defendants, *Martin v. Hel-*

*stad,* 578 F. Supp. 1473 (W.D. Wis. 1983), which was affirmed on appeal, 699 F.2d 387 (7th Cir. 1983).

Mr. Martin subsequently gained admission to the University of California, Berkeley—Boalt Hall School of Law. He attended law school there from August, 1982 to December, 1985, and received his law degree in May, 1986.

The BAPR report also discussed Mr. Martin's answers on his 1985 application to write the Wisconsin bar exam. First, in response to the question whether he had ever been "dropped, suspended, expelled or disciplined by a college, university or law school," Mr. Martin responded "No." The BAPR noted that in his federal action against the law school and in his subsequent appeal, Mr. Martin characterized the rescission of his admission as tantamount to an expulsion from the law school in his effort to establish a constitutionally protected property right to that admission that would entitle him to due process and equal protection before he could be deprived of admission.

After the BAPR brought this matter to his attention in its investigation commenced but not completed in 1986, Mr. Martin modified his answer to that question on his application to take the 1987 bar exam, qualifying his "No" answer with the following:

> "I have never been suspended, expelled or disciplined by a college, university or law school that I have attended. Therefore, I have answered this question 'No' on this and my previous applications for admission. I was offered admission to the University of Wisconsin Law School in 1981 and I accepted that offer. That offer was later rescinded by the law school prior to my enrollment as a student. I have addressed this matter with the Board of Attorneys Professional Responsibility as it related

to my answer to the question on my prior applications. I note it in this application to clarify my response to this question."

The BAPR report also set forth Mr. Martin's response on his 1985 bar admission application to the question whether he had ever been charged with, convicted of or pled guilty to a criminal charge. Mr. Martin answered in the affirmative, noting in his explanation the 1978 federal conviction and the "full pardon" Governor Lucey granted him in January, 1972. However, Mr. Martin did not note any of his prior convictions to which that pardon did not apply but merely stated that any information or details regarding the pardon or "the underlying offenses" that could not be obtained from the governor's office "will be completely disclosed by me at your request, to the best of my ability to do so." In his explanation, Mr. Martin stated that he did not have access to any of his records or documents, other than the pardon itself and, since some 20 years had passed since the events that were the subject of his pardon, he preferred not to run the risk of giving inaccurate or incomplete information. He also noted that a report of his criminal record was available from the U.S. Probation Office or Crime Information Bureau.

On his application to write the 1986 bar exam, Mr. Martin no longer referred to the pardon as "full." In other respects, his explanation was substantially the same as on the 1985 application. In his subsequent application to write the 1987 bar exam, Mr. Martin further modified his explanation to note that he had supplied the Board a copy of the pardon and to state that he had previously submitted a "complete chronological history of my criminal convictions," apparently to the BAPR, at the Board's request.

35

Addressing Mr. Martin's criminal record, the BAPR report set forth several instances in which it determined that Mr. Martin lacked credibility. Specifically, the BAPR investigator referred to his explanations of the circumstances that led to his 1959 robbery conviction as a juvenile waived to adult court, his 1966 conviction of burglary and theft and his federal conviction in 1978. As to the latter, which the BAPR report termed "the major and glaring instance of lack of credibility," the BAPR report discussed at length the facts of that case determined at trial.

When asked to explain why he did not set forth the fact of the 1978 conviction on his 1981 law school application, Mr. Martin told the BAPR investigator that he was not guilty of the charge and that the conviction was clearly erroneous. He further stated, as he had in an explanatory letter to the law school admission authorities when the fact of that conviction became known to them, that the conviction was on appeal and he expected an imminent reversal. In fact, however, when he submitted the law school application, Mr. Martin's criminal conviction had already been affirmed on direct appeal and the only matter pending was his habeas corpus motion collaterally attacking the conviction. That motion to vacate his sentence subsequently was dismissed and that dismissal was affirmed on appeal.

In addition to the foregoing, the BAPR report noted positive aspects of Mr. Martin's history following his pardon, including what the BAPR termed "an impressive resume" and "excellent references." The report noted that Mr. Martin currently held "an extremely responsible position and since graduation from law school, has consistently maintained employment in responsible, professional positions." In this respect, the Board made the following finding: "The

applicant submitted substantial information to the Board and to BAPR that reveals efforts at rehabilitation and community service. This information was fully considered by both BAPR and the Board." The Board concluded, however, "The applicant's evidence of rehabilitation and community service was not sufficient to overcome the seriousness of the character and fitness issues identified by the Board and BAPR."

Based on the findings set forth in its decision, the Board concluded that Mr. Martin failed to meet his burden to establish good moral character and fitness to practice law so as to qualify him for bar admission. Further, the Board specifically concluded that Mr. Martin has not established that he meets the standards of character and fitness adopted by the Board in its rules.[4] Those rules, in pertinent part, provide that

---

[4] The rules specified by the Board provide as follows:

BA 6.01 Standard of Character and Fitness. A lawyer should be one whose record of conduct justifies the trust of clients, adversaries, courts and others with respect to the professional duties owed to them. A record manifesting a deficiency in the honesty, diligence or reliability of an applicant may constitute a basis for denial of admission. The Supreme Court Rules place on the applicant the burden of producing information sufficient to affirmatively demonstrate the character and fitness appropriate for bar admission.

BA 6.02 Relevant Conduct. The revelation or discovery of any of the following should be treated as cause for further inquiry before the Board decides whether the applicant possesses the character and fitness to practice law:

    (a)   unlawful conduct
    (b)   academic misconduct
    (c)   false statements by the applicants, including concealment or nondisclosure
    (d)   acts involving dishonesty or misrepresentation
    (e)   abuse of legal process
    (f)   neglect of financial responsibilities
    (g)   neglect of professional obligations
    (h)   violation of an order of a court

"[a] record manifesting a deficiency in the honesty, diligence or reliability of an applicant may constitute a basis for denial of admission" and relevant conduct to be considered includes "unlawful conduct," "false statements by the applicant, including concealment or nondisclosure," and "acts involving dishonesty or misrepresentation."

In this review, Mr. Martin first contended that the Board erred by failing to delete from the BAPR investigative report what he asserts was erroneous information. However, rather than challenging specific facts in the investigative report, Mr. Martin attacked the BAPR investigator's interpretation of the facts, such as his omission from a 1986 resume of any mention of employment in the family restaurant business while he was incarcerated in Michigan as indicative of the fact he was not so employed, from which the investigator determined that his statement on his law school

(i)   evidence of mental or emotional impairments

(j)   evidence of drug or alcohol dependency

(k)   denial of admission to the bar in another jurisdiction on character and fitness grounds

(l)   disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction

BA 6.03 Use of Information. The Board will determine whether the present character and fitness of an applicant qualifies the applicant for admission. In making this determination through the processes described above, the following factors should be considered in assigning weight and significance to prior conduct:

(a)   the applicant's age at the time of the conduct

(b)   the recency of the conduct

(c)   the reliability of the information concerning the conduct

(d)   the seriousness of the conduct

(e)   the mitigating or aggravating circumstances

(f)   the evidence of rehabilitation

(g)   the applicant's candor in the admissions process

(h)   the materiality of any omissions or misrepresentations

(i)   the number of incidents revealing deficiencies

admission application that he was employed in that business during that time was, at the very least, misleading.

Mr. Martin also challenged the investigator's discussion of his criminal history, contesting not the fact of those convictions but the investigator's assessment of his credibility in explaining them. For example, Mr. Martin asserted that his 1978 federal conviction resulted solely from the perjured testimony of an FBI agent and that, because he was innocent of the charge on which he was convicted, the investigator's adverse determination of his credibility on the basis of his explanation of the underlying facts of that conviction is erroneous. Mr. Martin also asserted that the investigator relied solely on conjecture in questioning his credibility on the basis of his explanation of his 1965 conviction, concerning which the investigator stated that Mr. Martin "repeatedly downplayed and minimized his conduct which led to his convictions," and his 1959 conviction, which Mr. Martin explained as having resulted from nothing more than "kids who were just goofing around."

Mr. Martin also contended that the investigator erroneously concluded that the Milwaukee residence he set forth as his address while he was incarcerated in Michigan was, in fact, not his address and that his assertion that it was on his law school admission application was misleading, if not deceitful. Likewise, in respect to his involvement in a family restaurant business, Mr. Martin contended that the fact he had invested in that business entitled him to list it as his employment on his application for law school admission, even though he was incarcerated during the time to which that alleged employment related.

Mr. Martin's argument that the investigator erroneously concluded that he had made misrepresentations on his application to write the 1985 Wisconsin bar exam addressed only his answer to the question whether he had ever been dropped, suspended, expelled or disciplined by a college, university or law school. Significantly, he did not address the fact that his response to the application question regarding criminal convictions referred only to what he termed a "full" gubernatorial pardon.

In addition to failing to establish that the Board's findings of fact are clearly erroneous, Mr. Martin has unsuccessfully attempted to overturn the Board's conclusion that he failed to meet his burden of establishing requisite moral character and fitness to practice law by recourse to his character references, awards, achievements and employment history. Notwithstanding his insistence that this material outweighs any negative facts reflecting on his character and fitness and is more than sufficient to achieve the purpose of the character and fitness requirement, the Board's conclusions that Mr. Martin failed to meet his burden to establish the requisite moral character and fitness to practice law in order to entitle him to bar admission is properly supported by the facts.

Mr. Martin next argued that the Board's refusal to grant his request for a hearing following its initial adverse determination concerning his satisfaction of the character and fitness requirement violated his constitutional right to due process. That contention must be rejected, as Mr. Martin's request for a hearing was not responsive to the Board's notice that it would grant a hearing "only if [he] *demonstrate* that there are facts bearing on [his] case that cannot be presented in writing" or consistent with the applicable rule, SCR

40.08(2): "The board shall grant a hearing to an applicant only upon *a showing* that there are facts bearing on the applicant's case that cannot be presented in writing. . . ." (Emphasis added.) Mr. Martin merely wrote to the Board, "Please be advised that I am formally requesting a hearing by the Board on this matter, as there are facts bearing on this case that cannot be presented in writing." He neither demonstrated that there were facts that could not be presented in writing nor specified any such facts in his request for hearing.

In respect to a hearing in bar admission matters, the court set forth the procedural due process safeguards required to be afforded applicants in *Application for Admission to Bar of Childs,* 101 Wis. 2d 159, 167–168, 303 N.W.2d 663 (1981). The Board afforded Mr. Martin those safeguards and Mr. Martin filed a lengthy written appeal of the Board's initial determination. Based on his request for a hearing, the Board correctly determined that a hearing was not warranted and so stated in its final decision.

Finally, Mr. Martin argued that the Board's refusal to certify his satisfaction of the character and fitness requirement, when presented with what he considered overwhelming evidence that met the character and fitness standard, violated his due process and equal protection rights and deprived him of a constitutionally protected property interest in employment in the legal profession. We reject that contention, as Mr. Martin has failed to establish either a property interest in being licensed to practice law solely by virtue of his graduation from law school and successful completion of the bar examination or a liberty interest in the prac-

tice of the legal profession. Mr. Martin's interest in bar admission is nothing more than a unilateral expectation on his part and, as he has not been admitted to the bar, he enjoys no liberty interest in employment in the legal profession.

We adopt the Board's findings of fact, as they have not been shown to be clearly erroneous. We also adopt the Board's conclusions based on those facts that Mr. Martin failed to meet his burden of establishing the requisite character and fitness to be admitted to the practice of law in Wisconsin. The BAPR investigator and the Board concluded that Mr. Martin was not credible in his explanation of the facts underlying his 1965 and 1972 convictions when interviewed in 1990 and 1991. That lack of credibility, taken together with the dishonesty inherent in the conduct that underlay his extensive criminal record and his responses on the 1981 law school application and the 1985 bar admission application, established a pattern of deceitful, misrepresentational or, at the least, misleading answers to pertinent questions concerning Mr. Martin's background as it reflected adversely on his fitness to be admitted to the practice of law in Wisconsin.

IT IS ORDERED that the decision of the Board of Bar Examiners declining to certify the character and fitness of Henry Leroy Martin under SCR 40.06 is affirmed.