IN the MATTER OF the BAR ADMISSION OF Tara J. VANDERPERREN:

Tara J. VANDERPERREN, Petitioner,

v.

BOARD OF BAR EXAMINERS, Respondent.

Supreme Court

*No. 02–1739–BA. Submitted on briefs December 17, 2002.— Decided May 13, 2003.*

2003 WI 37

(Also reported in 661 N.W.2d 27.)

152

For the petitioner there were briefs by *Tamara B. Packard* and *Cullen Weston Pines & Bach LLP,* Madison.

For the respondent the cause was submitted on the brief of *Thomas J. Balistreri,* assistant attorney general, and *James D. Doyle,* attorney general.

¶ 1. PER CURIAM. This is a review, pursuant to SCR 40.08(5),[1] of the final decision of the Board of Bar Examiners (Board) declining to certify that the petitioner, Tara Jean Vanderperren, satisfied the character and fitness requirement for admission to the Wisconsin bar set forth in SCR 40.06(1).[2] We reverse and remand the matter to the Board for further proceedings.

---

[1] References to supreme court rules will be to those in effect after October 1, 2000.

SCR 40.08(5) provides that: "A petition to the supreme court for review of an adverse determination of the board under this rule shall be filed with the clerk within 30 days of the date on which written notice thereof was mailed to the applicant."

[2] SCR 40.06(1) provides:

(1) An applicant for bar admission shall establish good moral character and fitness to practice law. The purpose of this requirement is to limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable

154

¶ 2. We fully appreciate the yeoman's service performed by the Board in conducting its full investigation of Ms. Vanderperren's background and circumstances surrounding her past conduct, much of which was less than admirable. The duty to examine applicants' qualifications for bar admission rests initially on the Board, and this court relies heavily on the Board's investigation and evaluation; however, this court retains supervisory authority and has the ultimate responsibility for regulating admission to the Wisconsin bar. *See In re Bar Admission of Rippl,* 2002 WI 15, ¶ 3, 250 Wis. 2d 519, 523, 639 N.W.2d 553.

¶ 3. The Board's refusal to certify that Ms. Vanderperren satisfied the character and fitness requirements for admission to the bar was based primarily on what the Board viewed, following its investigation, as her less than forthright and complete responses to questions on her application for admission to Hamline University School of Law, and her application to be admitted to the Wisconsin bar. Of specific concern to the Board were her descriptions of her past alcohol consumption and her resulting difficulties and contacts with the police and university authorities. These incidents also gave us pause; however, on balance, we determine that they were not of sufficient gravity to preclude her admission to the Wisconsin bar on character and fitness grounds. We note that all of the incidents cited by the Board involved Ms. Vanderperren's alcohol consumption and all occurred when she was younger. In fact, the last reported incident identified by the Board involving her excessive

degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice.

155

alcohol consumption occurred in 1997 when Ms. Vanderperren was a law student, and the last reported alcohol-related incident for which she received a citation from the police occurred in 1994. We believe that this dearth of reported alcohol problems in the last five years demonstrates that, as Ms. Vanderperren claims, she no longer abuses alcohol and has rehabilitated herself.

¶ 4. The Board's adverse decision regarding Ms. Vanderperren's application was also based on what the Board viewed as her lack of candor in revealing her past difficulties with alcohol in the answers she supplied to questions on the bar application form as well as her answers to questions on her law school application. We note, however, that Ms. Vanderperren corrected those applications and ultimately fully divulged her past history in her amended bar applications and supplemental materials; she also corrected her law school application shortly after she began her classes at Hamline. We think she satisfied SCR 40.06(3)[3] because Ms. Vanderperren corrected any misapprehension that she knew about arising in connection with her applications. We believe that to preclude her admission based on what might have been a less than complete disclosure in her initial bar application or law school application

_____

[3] SCR 40.06(3) provides that:

(3) An applicant shall establish to the satisfaction of the board that the applicant satisfies the requirement set forth in sub. (1). The board shall certify to the supreme court the character and fitness of qualifying applicants. The board shall decline to certify the character and fitness of an applicant who knowingly makes a materially false statement of material fact or who fails to disclose a fact necessary to correct a misapprehension known by the applicant to have arisen in connection with his or her application.

would depreciate her subsequent efforts to comply and provide full disclosure to the Board.

¶ 5. Here, as was true in the recent *Rippl* case, the Board may have felt constrained to find that this applicant's past actions and lack of candor precluded certifying her character and fitness for purpose of bar admission; we determine; however, that the incidents the Board relied on, now corrected and fully disclosed, are not of sufficient gravity to support a conclusion that Ms. Vanderperren should be barred from admission to practice law in this state. Again, like in *Rippl,* while some of the incidents cited by the Board are troubling, on balance, we conclude that they do not demonstrate that she lacks the character and fitness for admission to the bar of this state. Accordingly, we reverse.

¶ 6. Tara Jean Vanderperren was born and raised in the Green Bay area. She attended Edgewood College in Madison and graduated from St. Norbert College in DePere in December of 1995 with a Bachelor of Arts degree in Business. In December of 1995 she applied for admission and was accepted at Hamline University School of Law in Minnesota. She obtained her Juris Doctor degree from Hamline in December of 1998. She subsequently took and passed the Minnesota bar examination. After a character and fitness investigation in that state, she was admitted to practice law in Minnesota in April 2000.[4]

¶ 7. Ms. Vanderperren moved back to Green Bay in October of 2000 and applied for admission to the Wisconsin bar on December 4, 2000. She passed the February 2001 Wisconsin bar examination.

---

[4] She has also taken and passed the bar examination in Florida.

157

¶ 8. The Board subsequently conducted an investigation to determine Vanderperren's character and fitness to be admitted to the practice of law in this state. In response to questions raised by the Board during its investigation, Vanderperren twice amended her application and submitted supplemental material including written explanations about certain events that had occurred before she was in law school; she also provided further explanations about certain information in her law school application and events that had occurred during law school.

¶ 9. The Board's investigator filed a report that disputed some of the explanations proffered by Ms. Vanderperren and concluded as follows:

> There are many troubling issues in Ms. Vanderperren's application. For example, the sheer amount of inconsistencies represents a complete lack of regard for the application process and the need for full disclosure.
>
> It is also particularly troubling that Ms. Vanderperren seems to shirk responsibility for her actions. Not only did she attempt to conceal or greatly minimize her misdeeds to the Board, but she makes excuses for her lack of candor.

¶ 10. Based on that investigative report, the Board notified Ms. Vanderperren by letter dated June 25, 2001, that it intended to deny her application for admission to the Wisconsin bar. The Board's "Intent to Deny" letter asserted that Ms. Vanderperren's unlawful conduct in the past, and her incomplete and untruthful disclosures on her bar application as well as her law school application, were relevant to her character and fitness to practice law under the provisions of BA

6.02(a), (b), (c), (d), (g), and (j) of the Rules of the Board of Bar Examiners.[5]

¶ 11. In addition, the Board's letter cited BA 6.03(a), (b), (c), (d), (g), (h), and (i) as the basis for its adverse determination in this matter.[6]

---

[5] BA 6.02(a), (b), (c), (d), (g), and (j) provides: Relevant Conduct.

> The revelation or discovery of any of the following should be treated as cause for further inquiry before the Board decides whether the applicant possesses the character and fitness to practice law:
>
> (a) unlawful conduct
>
> (b) academic misconduct
>
> (c) false statements by the applicant, including concealment or nondisclosure
>
> (d) acts involving dishonesty or misrepresentation
>
> (g) neglect of professional obligations
>
> (j) evidence of drug or alcohol dependency.

[6] BA 6.03 provides, in pertinent part: Use of Information.

> The Board will determine whether the present character and fitness of an applicant qualifies the applicant for admission. In making this determination through the processes described above, the following factors should be considered in assigning weight and significance to prior conduct:
>
> (a) the applicant's age at the time of the conduct
>
> (b) the recency of the conduct
>
> (c) the reliability of the information concerning the conduct
>
> (d) the seriousness of the conduct
>
> . . . .
>
> (g) the applicant's candor in the admissions process
>
> (h) the materiality of any omissions or misrepresentations
>
> (i) the number of incidents revealing deficiencies.

¶ 12. The Board's Intent to Deny letter signed by its executive director informed Ms. Vanderperren that:

> The Board is concerned by your series of citations, by the underlying conduct they evince, and by your selective disclosure of those incidents to Hamline University Law School and to this agency. It believes that you have been at risk with respect to alcohol abuse, that you are willing to conceal material facts if that concealment can be of benefit to you, and that you have repeatedly shown contempt for authority in your encounters with law enforcement. The Board believes that it raises substantial doubt that you will maintain the high standards in the administration of justice which are required of Wisconsin attorneys . . . .

¶ 13. In response to this Intent to Deny letter Ms. Vanderperren provided additional rebuttal information explaining the circumstances surrounding her earlier conduct; she also pointed out that the conduct the Board had identified arose out of three incidents in her "young adult years" and that the last incident had occurred several years previously in 1997. Ms. Vanderperren acknowledged that in all of those prior incidents, alcohol had been a significant factor. She emphasized, however, that she had not had any trouble related to alcohol consumption since the 1997 incident that had occurred while she was a law student, and that after that, she had undergone her first AODA evaluation and had attended AA meetings and changed her drinking habits. In addition, she provided the Board with a copy of an AODA evaluation that had been conducted by the Minnesota Board of Bar Examiners prior to her being admitted to practice in that state in 2000. That evaluation reported that her alcohol abuse was "in full remission."

160

¶ 14. At her request the Board conducted a hearing on October 25, 2001, at which Ms. Vanderperren testified, under oath, that the discrepancies and omissions in her bar application were not intentional but had been caused by her haste in preparing the application. She also explained that she had filed a "corrected" law school application amending the negative answer she had given on that application to the question which asked "[h]ave you ever been convicted of any violation of law other than a juvenile offense?" That correction reflected that Ms. Vanderperren had received a citation for operating while intoxicated in 1992.

¶ 15. In addition, in her testimony before the Board, Ms. Vanderperren asserted that now she only occasionally drinks alcohol, and no longer drinks to the point of intoxication. She stated that the last time she was intoxicated was in 1997 when she had an argument with her law school roommate.

¶ 16. Ms. Vanderperren also submitted letters to the Board from her parents, her sister, and a longtime friend. All the letters acknowledged that Ms. Vanderperren had made mistakes relating to alcohol when she was a young adult but that she had learned from those mistakes and that she now had the character and fitness needed to be an attorney in Wisconsin.

¶ 17. Following that hearing and prior to the next scheduled meeting, the Board's executive director submitted his report and recommendation that the Board issue findings of fact and conclusions consistent with its earlier "Intent to Deny" letter. The executive director emphasized that Ms. Vanderperren acknowledged that most of her problems stemmed from her alcohol use but she nevertheless continued to drink and continued to be employed as a bartender. The director concluded that

the risk factors presented by her conduct " . . . have not been overcome by her apparent remorse for her prior conduct."

¶ 18. The Board considered that recommendation at its December 13, 2001, meeting. The Board then asked Ms. Vanderperren to undergo another AODA evaluation at her own expense in Florida where she was then residing. The Board suggested the names of three professionals for her to choose from to conduct the evaluation in Florida. Ms. Vanderperren chose Martha E. Brown. M.D., a Florida psychiatrist. After some confusion as to the extent of the evaluation to be conducted, Dr. Brown performed a full psychiatric and psychological evaluation and an AODA evaluation of Ms. Vanderperren. Dr. Brown's subsequent report submitted to the Board and Ms. Vanderperren recommended that Ms. Vanderperren not drink alcohol.[7] Dr. Brown wrote that "[i]f she decides not to drink, I see no reason that she cannot practice law with reasonable skill and safety."[8] Dr. Brown's report was accompanied by a report from a Florida psychologist who found that Ms. Vanderperren did not have significant emotional problems. The psychological report concluded:

> There was nothing to suggest that she is at any increased risk to harm her clients at present, and testing would suggest that her actual practice of law

[7] In an affidavit submitted in support of this appeal, Ms. Vanderperren asserts that after she received Dr. Brown's report, she has "completely abstained from consuming any alcohol."

[8] Dr. Brown also expressed concern about Ms. Vanderperren's "minimization" about the past events, her somewhat "dismissive" attitude toward her past behavior, and her apparent intolerance for the evaluation process.

could be unsupervised. However, as she is at increased risk to engage in a pattern of self-destructive behavior, continued random monitoring by a Board approved provider might be appropriate.

¶ 19. After the Board received the Florida AODA and psychological/psychiatric evaluation, the Board issued its Findings of Fact and Conclusions declining to certify that Ms. Vanderperren met the character and fitness requirements for admission to the Wisconsin bar. The Board's conclusions were:

> The applicant repeatedly conducted herself in violation of law, and selectively disclosed those violations to Hamline University School of Law and to the Board of Bar Examiners.
>
> The applicant concealed material facts when concealment was of benefit to her.
>
> The applicant repeatedly showed contempt for authority in her encounters with law enforcement.
>
> The applicant has not met the burden assigned to her under SCR 40.02 to establish that she meets the requirements for admission under SCR 40.06.

¶ 20. This court applies a two-pronged standard of review when reviewing an adverse determination by the Board. First, we will adopt the Board's Findings of Fact if they are not clearly erroneous. *In re Bar Admission of Crowe,* 141 Wis. 2d 230, 232, 414 N.W.2d 41 (1987); *In re Bar Admission of Rippl,* 2002 WI 15, ¶ 16, 250 Wis. 2d 519, 529–30, 639 N.W.2d 553. Second, we then determine whether the Board's conclusions of law based on the non-erroneous facts, are proper. *Id.* Although the court is appreciative of the Board's experience in administering the bar admission rules, the court

is obligated to make that legal determination de novo. *In re Bar Admission of Rusch*, 171 Wis. 2d 523, 492 N.W.2d 153 (1992).

¶ 21. A candidate for admission to the bar in this state bears the burden of proof to establish that he or she meets the qualifications for admission set out in SCR 40.02; those qualifications include meeting the character and fitness requirements identified in SCR 40.06. *See* SCR 40.02(3). In addition, SCR 40.07 provides that "[t]he burden of proof shall be on the applicant to establish qualifications under SCR 40.02. . . . " Pursuant to SCR 40.06(3), the applicant must establish character and fitness to the satisfaction of the Board whose duty it is then to certify to the supreme court character and fitness of qualifying applicants. *In re Bar Admission of Martin*, 181 Wis. 2d 27, 29, 510 N.W.2d 687 (1994); *In re Bar Admission of Rippl*, 2002 WI 15, ¶ 3, 250 Wis. 2d 519, 523, 639 N.W.2d 553.

¶ 22. In making the legal determination of whether the Board's conclusions of law based on the facts which are not clearly erroneous are proper, this court considers, like the Board, "whether the applicant possesses the character and fitness to practice law using the guidelines established in BA 6.02 and BA 6.03." *Id.* at ¶ 16. Although it is the Board's initial duty to examine an applicant's qualifications for bar admission, this court is the ultimate arbiter in regulating admission to the bar in this state. *Id.* at ¶ 3.

¶ 23. After reviewing the record and the Board's findings and conclusions we conclude that a few of the findings are clearly erroneous, and that while many of

the Board's findings may not be clearly erroneous, they do not in any event support the Board's ultimate conclusion that Ms. Vanderperren does not possess the requisite character and fitness for admission to the bar of this state. Even if all of the Board's findings of facts were supported by the evidence and hence could not be called clearly erroneous, in our opinion, they would not support the Board's ultimate conclusion.

¶ 24. For example, in its Finding of Fact 3.A., the Board wrote: "The applicant [Ms. Vanderperren] has been cited for three alcohol-related offenses, six motor vehicle offenses, and one offense each for assault, trespass, disorderly conduct, fraudulently obtaining a driver's license and using it to operate a motor vehicle, and for resisting arrest, all between 1987 and 1999."

¶ 25. The evidence in the record upon which this finding was based concerned alcohol-related incidents the first of which occurred in 1987 when Ms. Vanderperren received an underage drinking citation; next, a 1992 OWI citation in Madison; and, third, an incident in 1994 in Minneapolis.

¶ 26. In her application for admission to the Wisconsin bar, Ms. Vanderperren described the 1992 incident. She wrote that she had attended a Badger football game in Madison and after the game, went to bars on State Street. According to the written statement Ms. Vanderperren appended to her bar application, she became confused by the one-way streets when leaving a parking ramp and a Madison police officer pulled her over and asked her to perform sobriety tests; she was then taken to the police station for a breathalyzer test. In her written explanation of the incident Ms. Vanderperren wrote "I blew a .10 and was arrested. I know I received a couple other citations that evening but I am not exactly sure of the name of the offenses. I think one

ticket was for driving against traffic and another one was for under-age drinking."

¶ 27. During the Board's subsequent character and fitness investigation the investigator noted certain discrepancies and asked Ms. Vanderperren to supply missing details concerning her 1992 OWI arrest. Ms. Vanderperren responded by letter and submitted an amended application for admission to the Wisconsin bar. In this letter Ms Vanderperren blamed the lack of detail in her original application on the ground that it had been hastily prepared and submitted at the last minute. She asserted she was not trying to cover up anything about her past or to misstate or omit information; she pointed out, however, that the 1992 arrest had occurred several years before and she could not remember all the facts or the specific citations she had received as a result of that incident.

¶ 28. In any event, in her amended application and explanatory letter, Ms. Vanderperren wrote that in 1992 she was 18 or 19 years old and attending college in Madison. She explained that because she and her older sister looked very much alike, she had previously gone to the Wisconsin Department of Transportation in Madison and showed them her sister's expired driver's license. Ms. Vanderperren was then issued a new license reflecting her sister's name and birth date. Ms. Vanderperren explained that when she was stopped after the football game and the officer asked her to see her license, because that was the only license she had with her, she gave it to the police; consequently, the citations she received at that time were issued under her sister's name. Ms. Vanderperren wrote, however, that the next day she went back to the police station and explained what she had done and that she then received

166

. . . three or four citations including the OWI, obstructing (for not revealing my true identity in jail), and maybe one or two other ones. I went to court on the false license and I think it was dismissed to a different charge but I can't remember the exact name of the charge. Also, I am not sure if the obstructing was read in to the agreement or if I was charged with obstructing and paid the fine. I apologize again for this misunderstanding. I really thought that this incident was explained in the enclosed documents attached to the application.

¶ 29. The Board's investigator subsequently submitted an investigative report critical of Ms. Vanderperren for her failure to initially disclose pertinent information concerning the 1992 incidents including the fact, according to the investigator, that Ms. Vanderperren had "lied about her identity" when she was arrested in 1992 on the OWI charge in Madison; that report also noted that Ms. Vanderperren had claimed that the breathalyzer test indicated that her blood alcohol content was .10 when actually the police reports indicated it was .16.

¶ 30. The Board's investigator had similar misgivings about Ms. Vanderperren's lack of candor in explaining the 1994 incident in Minneapolis. In her initial application for admission to the Wisconsin bar Ms. Vanderperren revealed that she had been arrested in Minneapolis at a Viking/Packer football game in the fall of 1994. On the separate explanatory sheet she attached to that bar application Ms. Vanderperren described that incident as follows:

I came to the twin cities to see a Monday night football game at the Metro-dome. This was my first time at the Dome. I went downstairs during the game to have a cigarette and I went outside of the gates to smoke. When I proceeded to go back to my seat, a security

guard saw me and asked for my ticket stub but I did not have it. My boyfriend had it with him in the stands. The security guard kicked me out and I then went to a different gate. The security guard saw me and called the cops because he thought I was a [sic] intruder who did not have a ticket. I think I was not given the opportunity to show the security guard my ticket stub because I was all dressed up in Packer attire and it seemed like a clear act of prejudice against a fan from the opposite side. I think I was given a disorderly conduct ticket but I am not positive. The charge was expunged and there is no longer a record of this offense.

¶ 31. The investigative report later submitted to the Board by its investigator criticized Ms. Vanderperren for leaving out significant information about her 1994 arrest at the Viking/Packer game in Minneapolis. The investigator, relying on police reports, disputed Ms. Vanderperren's version that she could not get back into the stadium because her ticket stub was with her boyfriend inside the stadium. According to the Board's investigative report, the police reports of that incident revealed that Ms. Vanderperren had been removed from the game for intoxication, and that her arrest followed an altercation that occurred when she tried to get back in the game and purportedly punched one of the security guards. The investigative report acknowledged that although Ms. Vanderperren was eventually convicted on only a municipal disorderly conduct charge, she had nonetheless failed to mention that she had also been initially charged with fifth degree assault for striking the security guard; nor had she mentioned that she had been ejected from the game for intoxication and was trying to regain entry when the altercation occurred.

¶ 32. In addition, the Board's investigative report pointed out that Ms. Vanderperren had stated on her Wisconsin bar admission application that her disorderly

conduct violation had been "expunged." According to the investigator, however, Hennepin County criminal court records revealed that Ms. Vanderperren's motion for expungement of that conviction had been denied. There was apparently no dispute, however, that one year after Ms. Vanderperren's disorderly conduct conviction, it had been vacated and the citation dismissed.

¶ 33. Although we, like the Board, are troubled by these incidents and concerned by the applicant's apparent initial lack of candor in revealing the full extent of the incidents in her application, we find the Board's Finding of Fact 3.A. problematic for several reasons. First, we find no evidence in the record to support certain parts of this finding and accordingly those parts, at least, are clearly erroneous. As noted, the Board's Finding of Fact 3.A. states that Ms. Vanderperren had used a fraudulently obtained license to operate a motor vehicle and that she was cited for "resisting arrest." The record reveals, however, that the initial charge of fraudulently obtaining a duplicate operating license was subsequently amended to possession of underage false identification to which Ms. Vanderperren pled guilty; moreover, the record does not support the conclusion that she used that license to operate a motor vehicle. There is no dispute that at the time of the 1992 incident Ms. Vanderperren had her own valid driver's license albeit not in her possession at the time of her OWI arrest. However, she was not charged with the separate statutory violation of operating a motor vehicle without a valid driver's license. *See* Wis. Stat. § 343.05 (2001–02). Moreover, as the Board's own investigative report details, Ms. Vanderperren was charged with "obstructing"—not "resisting"—after she presented the false identification and was issued the citation under her sister's name.

¶ 34. In addition, this finding by the Board referred to an assault charge in Minnesota that was subsequently amended to a municipal disorderly conduct offense. The Board's finding, however, counts both. Moreover, Ms. Vanderperren apparently never was charged with trespass as the Board's finding asserts.

¶ 35. Also, the Board's investigator criticized Ms. Vanderperren's claim that her disorderly conduct conviction had been "expunged" when actually her motion to expunge the conviction had been denied. However, as noted, there is no dispute that the disorderly conduct conviction based on Ms. Vanderperren's guilty plea was subsequently vacated and the citation dismissed after a year. We think the distinction between a conviction being "expunged" versus being "vacated and dismissed," is not so great as to warrant a finding of lack of candor on the applicant's part when using the terms interchangeably. If this could be viewed as a misrepresentation, it is certainly an immaterial one. *See* BA 6.03(h).

¶ 36. In addition, we note that Finding of Fact 3.A. refers to a time period between 1987 and 1999. It is undisputed, however, that since 1994 Ms. Vanderperren has been cited for only two speeding offenses: one in Minnesota in 1998, and another in Wisconsin in 1999. It is not clear if the Board was referring to those speeding offenses in its Finding of Fact 3.A.; in any event, Ms. Vanderperren's last alcohol-related citation was actually issued in 1994 and her last reported alcohol-related incident was her argument with her law school roommate in 1997.

¶ 37. We also believe that this broadly written Finding of Fact 3.A. unduly emphasizes Ms. Vanderperren's past conduct as a basis for the Board's decision declining to certify her current character and fitness to practice law in this state. In *In re Bar*

170

*Admission of Gaylord,* 155 Wis. 2d 816, 456 N.W.2d 590 (1990), this court upheld the Board of Attorneys Professional Competence conclusion denying certification of that applicant's character and fitness; that conclusion was based on findings by the Board of Attorneys Professional Responsibility indicating that that applicant had not fully answered the question on her bar admission application concerning her past criminal and civil law violations. In upholding the Board's decision to refuse to certify that applicant's character and fitness, this court in *Gaylord* emphasized that the basis of that decision was not the applicant's past conduct that led to three criminal offenses which she had revealed, although not fully explained, or to the numerous traffic offenses that that applicant had not revealed; rather, the applicant in *Gaylord* was denied admission because she failed to meet her burden to establish good moral character and fitness to practice law solely because of her inaccuracies and omissions in her applications—i.e., her lack of candor. The applicant in *Gaylord* was not denied admission based on her past bad conduct; rather, it was that applicant's lack of candor in not fully explaining that past conduct that was the basis for the Board and this court to reject her request for admission. Here we believe Ms. Vanderperren has fully—but perhaps belatedly—divulged all pertinent information about her past alcohol-related problems. Those past problems should not now preclude her admission to the bar of this state on character and fitness grounds.

¶ 38. In the instant matter the Board's Finding of Fact 3.A. stands alone; it is not part of the subsequent Finding of Fact 3.C. which is the Board's "lack of candor" finding against Ms. Vanderperren and which we discuss later in this opinion. The fact that Ms. Vanderperren may have in her past received municipal or criminal

citations stemming from her excessive consumption of alcohol does not mean that she does not meet the character and fitness requirement for admission to the Wisconsin bar. To the extent that the Board's Finding of Fact 3.A. is not supported by evidence in the record we conclude it is clearly erroneous.

¶ 39. A similar criticism may be lodged against the Board's Finding of Fact 3.B. where the Board found: "The applicant has been involved in misconduct towards her roommate while at Hamline University School of Law, resulting in the requirement that she attend AA meetings and counseling."

¶ 40. This finding was based on a 1997 incident, also alcohol induced, in which Ms. Vanderperren and her African-American roommate argued and Ms. Vanderperren made disparaging racial comments. In response to her roommate's complaint that Ms. Vanderperren had violated the law school's code of conduct, the dean of the Hamline University School of Law appointed a law professor to investigate and file a report. That professor later met with Ms. Vanderperren and, at his request, she then met with the law school's director of counseling for an evaluation.

¶ 41. The counselor assessed Ms. Vanderperren for possible alcoholism and determined that she was "borderline." At the counselor's suggestion, Ms. Vanderperren attended AA meetings and continued counseling during the ensuing semester. After reviewing Ms. Vanderperren's progress, the investigating professor submitted his report to the dean. The professor stated that he had investigated the roommate's allegation against Ms. Vanderperren and found "no probable cause and [I] recommend dismissal of the matter." The investigating professor explained that his no probable cause

finding was based on the fact that the roommate had agreed with the recommendation, that Ms. Vanderperren had participated in continuing counseling and had attended AA meetings regularly, and that she was willing to apologize to her roommate. The dean accepted the recommendation and that matter was dismissed. The dean sent letters to Ms. Vanderperren and her roommate stating that the university had determined that there was "no cause" to proceed.

¶ 42. During the Board's subsequent character and fitness investigation it asked Ms. Vanderperren for more information concerning this 1997 roommate incident. As noted, Ms. Vanderperren filed an amended application for admission to the Wisconsin bar and included the following explanation of the 1997 incident:

> Once again, I wasn't trying to be misleading and don't believe I was misleading the Board. My understanding was if I were to send my roommate an apology, attend meetings, and continue to see the school therapist, that her allegations against me would be dropped. That is the only reason why I agreed to the above terms. Also, if I followed these terms, the allegations were not to be part of my file at Hamline. This is another indication that I thought the allegations were dropped. I guess [I thought] the above conditions resolved the allegations. However, my roommate did not file a formal complaint (to the best of my understanding) and I thought the allegations were no longer pursued and thus dropped. Before I graduated from Hemline [sic], I did check on these allegations and I asked Dean Martin to show me my file. Dean Martin showed my file to me and there wasn't any mention of this incident.

¶ 43. After reviewing the record, we agree with Ms. Vanderperren that based on the undisputed facts, the Board's Finding of Fact 3.B. that she had been involved in "misconduct" toward her roommate is

173

clearly erroneous. We are not persuaded by the Board's argument that although the university may have made no finding that Ms. Vanderperren had engaged in misconduct toward her roommate, the Board could make its own determination that she had been involved in "misconduct." Nor are we convinced by the Board's argument that the law school actually made a "tacit" finding that Ms. Vanderperren had engaged in misconduct toward her roommate because otherwise there would have been no need for her to apologize or undergo alcohol and psychological testing. We think the determination made by the university of no probable cause cannot be transmuted into a finding that Ms. Vanderperren had engaged in "misconduct" toward her roommate. We observe that the Board cited no specific university code provision that Ms. Vanderperren's conduct had violated; rather, it was the Board's subjective assessment that Ms. Vanderperren's actions, which were never substantiated by the university's investigation, constituted misconduct. Because the Board's Finding of Fact 3.B. that Ms. Vanderperren had been involved in "misconduct" toward her roommate is clearly erroneous, that finding cannot be used to support the Board's ultimate conclusions regarding her character and fitness.

¶ 44. The Board's Finding of Fact 3.C., as noted above, is actually its "lack of candor" determination. In that finding the Board stated: "The applicant provided incomplete and false statements in her application to Hamline University School of Law and to the Board."

¶ 45. As noted, however, most if not all of Ms. Vanderperren's initial statements and explanations were subsequently corrected by her in her additional materials and her testimony before the Board and her amended applications. Apparently, the "false" statement

174

the Board referred to was her negative answer to the question on her December 1995 law school application asking "[h]ave you ever been convicted of any violation of law other than a juvenile offense?"

¶ 46. When the Board subsequently asked for additional information from Ms. Vanderperren about this answer, she filed a second amended bar application accompanied by another explanatory letter. In this second explanatory letter Ms. Vanderperren wrote that she had answered "no" to that question on the law school application because she had misunderstood the question. She further explained that shortly after classes began the dean and other law school faculty held an informational meeting with the student body and emphasized the importance of providing accurate information on the law school application form. Ms. Vanderperren wrote that after that meeting she went to the dean and amended her application to reflect her earlier citation. In her explanatory letter accompanying her second amended bar application Ms. Vanderperren wrote:

> To the best of my understanding at the time I filled out the [Hamline] application the OWI I [had] received was considered a civil misdemeanor and the question was worded in a criminal context. It was early into the first semester of law school, when the Dean and Professor Butterfoss addressed the issue of omission of incidents on law school applications. I made an appointment with the Dean and explained the misinterpretation and asked how I would go about amending my application. I then amended my law school application. This should be noted in my file at Hamline.

¶ 47. Although the Board's Finding of Fact 3.C. that Ms. Vanderperren had provided incomplete statements in her application forms may not be clearly

175

erroneous, we believe this finding discounts the alternative directive in SCR 40.06(3), that "[t]he board shall decline to certify the character and fitness of an applicant who knowingly makes a materially false statement of material fact *or* who fails to disclose a fact necessary to correct a misapprehension . . . ." (Emphasis added.) Here, Ms. Vanderperren, in fact, disclosed the facts necessary to correct the misapprehension. She voluntarily did so with respect to the law school application form and she likewise corrected her bar admission application when questioned by the Board.

¶ 48. In an effort to avoid unduly lengthening this opinion, we think it necessary to briefly discuss only three additional findings of the Board.

¶ 49. In Finding of Fact 3.D. the Board referred to two AODA assessments of Ms. Vanderperren, one by Hamline Law School and the other by the Minnesota Board of Law Examiners. In its Finding of Fact 3.D. the Board wrote: "The applicant was asked to undergo AODA assessments by Hamline University School of Law and the Minnesota Board of Law Examiners, which assessments concluded that your alcohol use had been problematic in the past but that it appeared to be in remission."

¶ 50. In fact, the Board only had before it the Minnesota Board of Law Examiners' AODA assessment of Ms. Vanderperren. The record before this court now has been supplemented with Hamline's AODA report. Both AODA assessments are favorable to Ms. Vanderperren, and contrary to the Board's finding that her alcohol use "appeared to be in remission," neither report uses that equivocal phrase. The Minnesota report states that Ms. Vanderperren's alcohol abuse is "in full remission," and the Hamline AODA report states that

176

the Law school assessor found "insufficient signs . . . to make a positive determination of [alcohol] dependency or abuse."

¶ 51. We find the Board Finding of Fact 3.D. to be generally irrelevant because it does not support the determination that Ms. Vanderperren does not possess the appropriate character or fitness to practice law in this state. This finding does not relate to a fact or proposition that is of consequence to the Board's ultimate determination because it is not a finding that she is alcohol dependent. *See* BA 6.02(j). Moreover, it has little probative value concerning Ms. Vanderperren's character and fitness to practice law in this state. *See State v. Sullivan,* 216 Wis. 2d 768, 772, 576 N.W.2d 30 (1998). Even if it were true that two AODA assessments —one in 1997 and the other in 2000—concluded that Ms. Vanderperren's alcohol use had been "problematic in the past" but now "appeared to be in remission," that would not be of consequence in determining her current character and fitness.

■

¶ 52. Similarly, the Board's Finding of Fact 3.E. is also generally irrelevant. That finding states: "The applicant continued to work as a bartender from September 1993 through January 2002 (with a 3/99 to 9/00 hiatus, when she worked as a server)." That finding, even if not clearly erroneous, has nothing to do with Ms. Vanderperren's character or fitness to practice law. Even if one is alcohol dependent, working as a bartender is not blameworthy.

■

¶ 53. We observe, however, that that finding is related to the Board's fourth Finding of Fact which the Board mislabeled as Finding of Fact 3. In that fourth finding the Board stated: "The applicant was afforded

opportunities to demonstrate that she had rehabilitated herself and failed to do so, for the reason that she continued to seek and obtain employment in alcohol-related settings despite having undergone AODA evaluations, counseling and participation in AA."

¶ 54. Again, this court concludes that that finding, clearly erroneous or not, is irrelevant. Moreover, Ms. Vanderperren claims that she no longer drinks alcohol. We believe that claim, supported by the fact that she has not had any reported alcohol-related incidents since 1997, belies the Board's determination that she has failed to rehabilitate herself.

■■■

¶ 55. In summary, after our de novo review of the record, we conclude that even if all of the Board's findings could be described as not clearly erroneous, we think the findings do not support the Board's ultimate conclusion that Ms. Vanderperren has failed to establish the requisite character and fitness to be admitted to the practice of law in this state.[9] On the contrary, even if all the Board's findings are unassailable, we conclude that Ms. Vanderperren has the appropriate character and fitness to be admitted to practice in this state based on the guidelines set out in BA 6.02 and BA 6.03. We note, for example, that: (1) she was relatively young when she received the various alcohol-related citations,

---

[9] In this respect, we also note that there is no finding by the Board relating to paragraph 3 of its conclusions that Ms. Vanderperren " . . . repeatedly showed contempt for authority in her encounters with law enforcement." We acknowledge that the Board's investigative report detailed some of Ms. Vanderperren's comments to the police officers at the time of her arrests, however, the Board made no specific findings of fact that would support this conclusion that she repeatedly showed contempt for authority.

*see* BA 6.03(a); (2) her last alcohol-related incident for which she was cited occurred in 1994 and her alcohol-related difficulty with her roommate occurred in 1997, *see* BA 6.03(b); (3) on a continuum of "seriousness," the offenses for which she has been cited were at most misdemeanors and most were traffic offenses, *see* BA 6.03(d); (4) the lack of any recent alcohol-related incidents—or for that matter the lack of any recent incidents at all—demonstrate that she has been rehabilitated and is, as she claims, no longer drinking, *see* BA 6.03(f); and (5) Ms. Vanderperren's initial lack of candor in the admission process, *see* BA 6.03(g), and the materiality of any omissions or misrepresentations by her in her applications, *see* BA 6.03(h), when compared to prior cases such as *In re Bar Admission of Gaylord* and *In re Bar Admission of Heckman,* 206 Wis. 2d 280, 556 N.W.2d 746 (1996), support a conclusion that her past conduct was neither shocking nor of great significance in determining her current character and fitness.

¶ 56. Although this case is factually distinguishable from *In re Bar Admission of Rusch,* 171 Wis. 2d 523, 492 N.W.2d 153 (1992), we conclude here, as we did in *Rusch,* that incorrect answers on a bar admission application, all of which were subsequently corrected, are generally an insufficient basis for a conclusion that the applicant has failed to establish the requisite character and fitness to be admitted to the bar in this state.

¶ 57. Moreover, we find it significant that this applicant has been admitted to the bar of the State of Minnesota after that state conducted its own character and fitness investigation. Under BA 6.02(k), the Board of Bar Examiners is instructed to consider as relevant conduct, the denial of the applicant's admission to the bar of another jurisdiction on character and fitness

grounds. If denial of admission on those grounds in another state is relevant, then we believe the converse is also true; a favorable determination by another state that the applicant possesses the character and fitness to be admitted to the bar in that other jurisdiction should also be considered relevant. This is especially true when, as here, the admission in the other state was recent and there have been no new or intervening facts to impugn the other jurisdiction's determination that the applicant possesses the appropriate character and fitness to be admitted to the bar of that jurisdiction. Here, Minnesota admitted Ms. Vanderperren to the bar of that state in April of 2000. There is no evidence of any subsequent untoward events involving Ms. Vanderperren which would cast doubt on that jurisdiction's admission determination.

¶ 58. We fully appreciate the time-consuming and very difficult job the Board of Bar Examiners performs in conducting its character and fitness investigation pursuant to SCR 40.06. We conclude, however, after our own mandated de novo review, that the incidents from Ms. Vanderperren's past cited by the Board to support its fact-driven determination that she lacks the character and fitness to be admitted to the bar of this state, are not of sufficient gravity for us to adopt that conclusion. Indeed, we hold that the record evidence, taken as a whole, does not support the ultimate conclusion that Ms. Vanderperren has failed to establish the requisite character and fitness to be admitted to the bar in this state.

¶ 59. Because we reverse the decision of the Board declining to certify Ms. Vanderperren's character and fitness requirement for bar admissions for the reasons identified above, we deem it unnecessary to

address the other arguments, including her due process claims as set out in her brief.

¶ 60. IT IS ORDERED that the decision of the Board of Bar Examiners declining to certify that Tara Jean Vanderperren has satisfied the requirements for admission to the practice of law in Wisconsin is reversed and the matter is remanded to the Board for further action consistent with this order.

¶ 61. DAVID T. PROSSER, J. *(concurring).* This case raises troubling questions about our procedures for reviewing an applicant's request for admission to the Wisconsin bar.

¶ 62. Under SCR ch. 40, the Board of Bar Examiners screens each applicant. A candidate must satisfy the legal competence requirements set out in SCR 40.03, SCR 40.04, or SCR 40.05, and also satisfy the character and fitness requirements in SCR 40.06. The burden is on the applicant. The Board certifies its favorable findings to this court.

¶ 63. The Board is in a delicate position when certification of an applicant's character presents a close call. *In re Bar Admission of Rippl,* 2002 WI 15, ¶ 3, 250 Wis. 2d 519, 523, 639 N.W.2d 553. "If the Board admits a questionable candidate, that admission effectively deprives this court of the opportunity to review the Board's decision because, obviously, a successful applicant will not seek review of the Board's decision." *Id.* On the other hand, if the Board declines to certify a questionable candidate, it opens itself to reversal on appeal and even to published criticism.

¶ 64. This criticism is linked to our standard of review. We adopt the Board's findings of fact unless they are clearly erroneous. Majority op. at ¶ 20. However, if the court comes to a different ultimate conclusion on

181

admission, we are almost bound to take issue with the Board's findings of fact. This puts the Board in not only a delicate position but also a vulnerable position. If the Board certified all applicants regardless of their indiscretions, it would never be reversed or criticized, for the court would be oblivious to what was happening. The Board's dilemma is disconcerting.

¶ 65. In this case, I concur in the judgment that Tara J. Vanderperren should be admitted to practice law in Wisconsin. In my view, the applicant clearly established her competence: she was graduated from a recognized law school and then passed the Minnesota, Florida, and Wisconsin bar examinations. In addition, she is admitted to practice in Minnesota. With respect to her character and fitness, the incidents described are serious but they are mostly youthful excesses and mistakes, and cannot block her admission forever. All in all, I believe the applicant deserves the benefit of the doubt. She should have the opportunity to begin the practice of law with a clean slate—with an understanding of the importance that courts attach to character and ethics and a warning that this court has a long memory.

¶ 66. I reach this conclusion without criticism of our Board. I write separately to emphasize that the Board was doing its job to protect the bar and the public when it flagged this case.

¶ 67. I am authorized to state that Justices JON P. WILCOX and ANN WALSH BRADLEY join this opinion.