# IN the MATTER OF the BAR ADMISSION OF: Lauri Jean GAYLORD.

Supreme Court

*No. 89-2216-BA. Submitted on briefs May 30, 1990.—Decided June 25, 1990.*

(Also reported in 456 N.W.2d 590.)

For the petitioner there were briefs by *Phillip M. Steans* and *Steans, Skinner, Schofield & Higley,* Menomonie.

For the Board of Attorneys Professional Competence there was a brief by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

PER CURIAM. *Review of Board of Attorneys Professional Competence decision; decision affirmed.*

We review the decision of the Board of Attorneys Professional Competence (BAPC) declining to certify the character and fitness of Lauri Jean Gaylord for admission to the practice of law in Wisconsin. Ms. Gaylord asserted numerous grounds for overturning BAPC's decision, including denial of due process, legally insufficient findings and conclusions, failure to grant her a hearing following the initial BAPC determination, failure to consider her rehabilitation and inclusion of prejudicial materials in the report of the Board of Attorneys Professional Responsibility (BAPR) of its investigation into her moral character.

Because we determine that Ms. Gaylord was afforded adequate notice of the basis for BAPC's decision and was given reasonable opportunity to respond and that BAPC's findings and conclusions adequately support its denial of certification of her character and fitness to practice law, we affirm the decision of the BAPC.

Having successfully completed the Wisconsin bar examination in July, 1988, Ms. Gaylord would have been entitled to admission to the practice of law upon certification of her character and fitness to practice law. Pursuant to our rules, the certification of the character and fitness of an applicant for admission upon examination

is to be made by BAPC. SCR 40.06. Following review of Ms. Gaylord's application for admission, which she submitted prior to taking the examination, BAPC determined that further investigation of her moral character and fitness to practice law was warranted. Accordingly, BAPC referred the matter to BAPR for investigation, pursuant to SCR 22.29.[1]

BAPR filed its report with BAPC in April, 1989 recommending that Ms. Gaylord not be certified for bar admission. That negative recommendation was based on Ms. Gaylord's answer to the bar admission application question asking whether she had "ever been charged with, convicted of, or entered a plea of guilty or no contest to a civil law violation, local ordinance violation, or a criminal charge? [Omit parking tickets.]" and, if so, to give "full details."[2] In answer to that question, Ms. Gaylord listed three offenses charged in Minnesota, with an

---

[1]SCR 22.29 provides, in part:

(1) The administrator [of the Board of Attorneys Professional Responsibility] upon request of the board of attorneys professional competence shall investigate the moral character of a person applying for admission to the bar. The applicant shall make a full and fair disclosure of all facts and circumstances pertaining to questions involving the moral character of the person. Failure to provide the information or misrepresentation in a disclosure is misconduct and grounds for denial of admission.

(2) The administrator shall report the result of each investigation to the board and make a recommendation for or against the admission of the applicant.

(3) The board shall review the recommendation of the administrator and make its recommendation to the supreme court or the board of attorneys professional competence.

. . ..

[2]The application directed: "State the facts pertinent to the question to the best of your ability. Include names of people involved, addresses, dates, location, nature of the problem, reasons, disposition, reference to court records, etc."

explanation of each. In respect to the first, sentence was deferred and the charge was ultimately dismissed; in 1979 she was charged with unlawful possession of marijuana with intent to sell—she pleaded guilty to unlawful possession of a controlled substance, sentence was deferred and she was required to complete a counseling program; in November, 1981 she was charged with possession of a weapon without a permit—sentencing was deferred and the charge was dismissed after she completed court-ordered counseling.

The BAPR investigation discovered inaccuracies and discrepancies in Ms. Gaylord's description of those criminal charges and revealed 10 undisclosed traffic charges in Minnesota, including careless driving, refusal to take a breathalyzer test and driving after revocation, and a Wisconsin conviction in 1985 for speeding and a 1987 Wisconsin conviction for speeding and violating an eyeglass restriction. When BAPR asked why she failed to disclose those traffic charges on her application, Ms. Gaylord said she was unaware of them and they did not appear in the department of transportation records she reviewed prior to completing the application. However, the charges did appear in the records BAPR obtained in the course of its investigation.

Regarding the criminal charges, BAPR reported discrepancies between Ms. Gaylord's explanation of the incidents she gave at the time they occurred and the explanation she gave during BAPR's investigation. For example, in regard to the charge of possession with intent to deliver, she told BAPR staff that she had had no knowledge that an acquaintance had placed marijuana in her car; probation records, however, showed that she knew he had marijuana and intended to sell it and that she had agreed to let him put it in her car. For another example, the police report concerning the weap-

ons charge stated that the weapon was found in Ms. Gaylord's purse; Ms. Gaylord stated that a friend had placed it in a bag under the passenger seat of her car. The police report also stated that Ms. Gaylord had volunteered at the time of her arrest that the gun belonged to her boyfriend, who had given it to her for protection. During the BAPR invesitgation, Ms. Gaylord told BAPR that her boyfriend had showed her the gun and told her he wanted her to keep it for protection but that she "vehemently" rejected the offer and assumed that when he left her car, he took the gun with him.

Following receipt of the BAPR report on April 28, 1989, BAPC took up the matter at its May, 1989 meeting. In a letter dated June 9, 1989, BAPC notified Ms. Gaylord that, based upon the BAPR recommendation, BAPC had determined she failed to satisfy the character and fitness requirement for bar admission and that it would decline to certify her character and fitness.[3]

Ms. Gaylord responded to the BAPC June 9, 1989 decision, objecting that the information set forth in the edited version of the BAPR staff report she had been provided was insufficient to notify her with any certainty of the basis of the adverse decision. That edited report included background information and a description of the evidence BAPR uncovered regarding the three criminal charges and the undisclosed traffic charges; it omitted the BAPR recommendation itself

---

[3]The June 9, 1989 BAPC letter mistakenly referred to a March, not May, 1989 meeting. Also, the edited copy of the BAPR staff counsel report attached to that letter bore a "received" stamp dated June 9, 1989, although the original report was stamped "received" April 28, 1989. We reject Ms. Gaylord's argument that these apparent inconsistencies demonstrate that BAPC reached its decision prior to having received the BAPR report.

820

and the discussion and analysis of the evidence produced in the investigation. Ms. Gaylord's response addressed the concerns she inferred were relevant and included letters attesting to her good moral character, truthfulness and honesty.

Following consideration of Ms. Gaylord's written response, on October 30, 1989, BAPC issued findings of fact, conclusions and its decision declining to certify her satisfaction of the bar admission requirements.[4] The BAPC findings relevant to its decision are the following:

> 5. BAPC furnished a document entitled "Investigative Report" to the Board which treated both the accuracy of the applicant's characterizations of the three charges noted in response to Question 29(a) and her failure to disclose several other charges, primarily driving while intoxicated and driving after revocation on the Wisconsin application affidavit.
> . . .
> 7. The applicant was not factually accurate as to the three charges she disclosed in her response to question 29(a) on the Wisconsin application affidavit.
> 8. In response to Question 29(a) on the Wisconsin application affidavit, the applicant failed to disclose ten Minnesota traffic charges, among them four charges relating to driving after revocation and three relating to driving while intoxicated. The applicant also failed to disclose three Wisconsin traffic convictions, including two for speeding and one for violating a restriction on her driver's license.

---

[4]In its cover letter to Ms. Gaylord transmitting its decision, BAPC incorrectly termed her application as one on proof of practice elsewhere, rather than on bar examination. We reject Ms. Gaylord's contention that this was prejudicial.

On the basis of those findings, BAPC concluded that Ms. Gaylord did not meet her burden to establish to BAPC's satisfaction the requisite character and fitness for admission to the practice of law, as she is required to do by SCR 40.06. BAPC also concluded that, by her failure to disclose traffic charges and convictions and by her inaccurate response concerning criminal, civil and ordinance violations and charges, she was "ineligible" for bar admission, pursuant to SCR 40.06(3). That rule provides:

> An applicant for admission [by examination or by practice elsewhere] shall establish to the satisfaction of the board that the applicant satisfies the [character and fitness] requirement set forth in sub. (1). The board shall certify to the supreme court the character and fitness of qualifying applicants. The board shall decline to certify the character and fitness of an applicant who knowingly makes a materially false statement of material fact or who fails to disclose a fact necessary to correct a misapprehension known by the applicant to have arisen in connection with his or her application.

BAPC then declined to certify that Ms. Gaylord satisfied the requirements for bar admission.

It must be emphasized that the basis of the decision to decline certification of Ms. Gaylord's character and fitness to practice law was not her conduct that led to the three criminal charges and the numerous traffic offenses. Rather, BAPC determined that Ms. Gaylord did not meet her burden to establish good moral character and fitness to practice law solely by virtue of the inaccuracies and omissions in her admission application.

In her petition seeking review of that decision, Ms. Gaylord first contended that she was denied due process because BAPC's June 9, 1989 letter, including the edited

copy of the BAPR investigative report, did not sufficiently apprise her of the basis on which BAPC initially determined she did not satisfy the character and fitness requirement for bar admission. Consequently, Ms. Gaylord argued, she was denied an opportunity to specifically address BAPC's concerns in her response. Ms. Gaylord also contended that BAPC's ultimate findings and conclusions did not give her adequate notice of the basis for its adverse decision but merely stated that she had not been "factually accurate as to the three charges she disclosed" and "failed to disclose 10 Minnesota traffic charges . . . [and] three Wisconsin traffic convictions . . .." ██

We conclude that Ms. Gaylord was not denied due process in either BAPC's initial determination or in the ultimate decision. While the BAPC letter notifying Ms. Gaylord of its initial adverse determination itself did not specify the reasons for its decision, it stated that the decision was based on the BAPR adverse recommendation. The BAPR report appended to that letter compared Ms. Gaylord's answers on the application with statements she had given at the time of the incidents resulting in the weapons charge and the marijuana possession charge, with specific reference to appendices setting forth those statements.

In regard to the marijuana possession charge, the BAPR report set forth Ms. Gaylord's written explanation of the incident she gave to BAPR and how that explanation differed from the police report regarding her participation in the transfer of "something" from her car to her friend's car. When BAPR asked her to explain the discrepancy, Ms. Gaylord responded that the police records were incorrect. The BAPR report also cited the language of the probation officer's report describing Ms.

Gaylord's version of the events in which she admitted that her friend had told her he was going to sell 26 pounds of marijuana and asked her to carry it in the trunk of her car to the parking lot where the transaction was to take place. Regarding the weapon's charge, the BAPR report noted that Ms. Gaylord's answer on her bar admission application stated she was unaware there was a gun in her car. This contrasted with the police report of the matter, which stated that Ms. Gaylord had admitted that the gun belonged to her friend and that he had given it to her for her protection. The BAPR report then set forth the version of the incident Ms. Gaylord gave to BAPR, in which she acknowledged that her friend had the gun in her car, showed it to her and offered it to her for her protection but she refused.

The BAPR report also included a detailed list of the numerous traffic charges Ms. Gaylord had not disclosed in her admission application, as well as Ms. Gaylord's statement to BAPR that she did not disclose them because she was either unaware of them when she filled out the application or believed the question did not require that some of them be disclosed. The BAPR report then referred to a deposition[5] Ms. Gaylord had given to BAPR staff in which she stated that she had checked the Hennepin county, Minnesota records in preparing her application and that the traffic charges did not appear; however, those charges did appear on the records obtained by BAPR staff during the course of its

---

[5]Ms. Gaylord asserted that she had been invited to Madison to meet with a BAPR investigator to discuss issues relevant to its investigation but that discussion turned out to be a formal deposition, which she attended without notice. She contended that she was deprived of due process and equal protection by BAPR's failure to inform her of her right to have counsel present at the deposition. We find no merit in that contention.

investigation. The report also noted that Ms. Gaylord's statement that she had never knowingly driven a car after her license had been suspended or revoked was belied by facts showing she had been charged four times with operating a vehicle in Minnesota with a suspended or revoked license, albeit in possession of a valid Wisconsin license.

In view of the specificity of the BAPR investigative report BAPC furnished to Ms. Gaylord as the basis of its adverse determination, we conclude that Ms. Gaylord was not denied due process; she was given adequate notice of the basis of the BAPC decision and had a reasonable opportunity to respond to it. Indeed, her response addressed and explained each of the concerns raised in the BAPR report. We also conclude that BAPC's ultimate decision, setting forth its findings and conclusions, gave Ms. Gaylord a reasonable opportunity to respond in this review.

Ms. Gaylord next argued that BAPC's findings and conclusions were legally insufficient to support a denial of certification of her character and fitness to practice law. Her argument rests on the mandatory language of SCR 40.06(3) requiring BAPC to decline to certify character and fitness of an applicant who knowingly makes a materially false statement of material fact. Ms. Gaylord contended that the finding that she was not "factually accurate" in her description of the three criminal charges on the application was not equivalent to a finding that her response was either materially false or concerned material facts. She specifically asserted that the undisclosed traffic offenses do not rise to the level of material fact. Further, she argued, BAPC made no finding that she "knowingly" made materially false statements of material facts.

825

In response, BAPC took the position that SCR 40.06(3) does not divest it of discretion to deny character and fitness certification to an applicant who makes false statements or fails to disclose facts that may not rise to the "material" level. In addition to mandatory denial of certification to an applicant who knowingly makes materially false statements of material fact, BAPC asserted that it retains the discretion to deny certification to one who fails to provide information or makes misrepresentations in an application, even if not done knowingly or not concerning material facts. This, BAPC contended, is consistent with the stated purpose of the character and fitness rule: "[T]o limit admission to those applicants found to have the qualities of character and fitness needed to assure to a reasonable degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice." SCR 40.06(1). BAPC further noted that the rule establishing the procedure for BAPR investigation and recommendation of the moral character of bar applicants, SCR 22.29, does not use the terms "knowing" and "material":

> . . . The applicant shall make a full and fair disclosure of all facts and circumstances pertaining to questions involving the moral character of the person. Failure to provide the information or misrepresentation in a disclosure is misconduct and grounds for denial of admission.

 We agree. Under SCR 40.06(3), a knowingly made false statement of material fact or knowing failure to disclose a material fact in a bar admission application will result in BAPC's declining to certify the character and fitness of an applicant. False statements and failures

to disclose facts that arguably are not material may, because of their nature and number, warrant the conclusion that the applicant lacks the integrity and candor required of lawyers representing clients in our legal system and in our courts. Thus, BAPC could and, we determine, did properly conclude that Ms. Gaylord's answer to the application question established her lack of the requisite moral character and fitness for bar admission.

We find no merit in the other arguments made by Ms. Gaylord in this review: that her failure to disclose the numerous traffic offenses was not "knowing" because the application question does not specifically inquire about traffic offenses; that her obligation to supplement her original application with necessary information up to the time of actual admission to the bar gave her the right to disclose previously undisclosed matters and prevented BAPC from considering the completeness of her application answers as originally submitted, rather than as subsequently supplemented; that the inclusion of unrelated offenses in the copy attached to the BAPR report of a Minnesota ordinance under which she had been charged was prejudicial to an impartial consideration of her application; that BAPC failed to give adequate weight and consideration to the expungement of the Minnesota criminal charges and evidence of her rehabilitation.

Also lacking merit is Ms. Gaylord's argument that she was denied due process by BAPC's failure to afford her an adjudicatory hearing following its initial adverse decision. The procedure requires BAPC to grant a hearing to an applicant only upon a showing that there are facts bearing on the applicant's case that cannot be presented in writing. SCR 40.08(2). We adopted that step in the procedure in response to our holding in *Matter of Childs*, 101 Wis. 2d 159, 303 N.W.2d 663 (1981), in

which we stated, "Whether or not an adjudicatory hearing is required will depend on factors such as the nature and source of the information utilized by the board in making its determination and the existence of a dispute as to material facts which support the Board's refusal to certify." Here, Ms. Gaylord did not request a hearing when she responded to BAPC's initial determination to decline certification and BAPC correctly concluded that she had made no showing that there were facts bearing on her case that could not be or had not been presented in writing. Ms. Gaylord could not, nor did she, contend that she was unaware of the availability of a hearing, as BAPC expressly advised her of its availability.

Having determined that Ms. Gaylord had adequate notice of the basis of the BAPC decision and adequate opportunity to respond and, further, that the BAPC findings and conclusions were adequate to support its decision, one additional matter remains to be addressed. In her brief, Ms. Gaylord requested that, in the event it affirms the BAPC decision denying certification of her character and fitness to practice law, the court indicate when she may reapply for bar admission and whether and under what conditions she may be admitted. This is a question BAPC did not address and the answer to which lies within the discretion of the court.

In deciding that question, we look at the basis of the BAPC denial of certification. Here, it is clear that Ms. Gaylord's conduct resulting in the criminal and traffic offenses was not at issue; BAPC's conclusion that she failed to establish the requisite character and fitness to be admitted to practice law was based on her report of those offenses on her bar admission application. We do not consider the discrepancies in her description of the criminal offenses and the omission of the numerous traffic offenses of such seriousness as to prohibit Ms. Gay-

lord's ever being admitted to practice law in Wisconsin. They were, however, sufficiently serious to warrant denying her admission at this time.

In light of the fact that, but for satisfaction of the character and fitness requirement, Ms. Gaylord was qualified for bar admission in July, 1988, we determine that permitting her to reapply for admission after a period of one year from the date of this order is appropriate. Because our rules require a person eligible for bar admission on examination to be admitted within one year following the date of certification by BAPC of successful completion of the examination and certification of character and fitness, we will extend the deadline for actual admission for a period of time reasonably necessary to accommodate Ms. Gaylord's reapplication, should she reapply.

*By the Court.*—The decision of the Board of Attorneys Professional Competence is affirmed.