# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1945-BA |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of the Bar Admission of Abby D. Padlock: |
| | Abby D. Padlock, |
| |        Petitioner, |
| |     v. |
| | Board of Bar Examiners, |
| |        Respondent. |

BAR ADMISSION OF ABBY D. PADLOCK

| | |
|---|---|
| OPINION FILED: | June 29, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

JUSTICES:
Per Curiam.
ZIEGLER, C.J. filed a dissenting opinion, joined by ROGGENSACK and HAGEDORN, JJ.
NOT PARTICIPATING:

ATTORNEYS:

For the petitioner, there were briefs filed by *Peyton B. Engel* and *Hurley Burish*, *S.C.*, Madison.

For the respondent, there was a brief filed by *Jacquelynn B. Rothstein*, Director and Legal Counsel, Board of Bar Examiners.

**2021 WI 69**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP1945-BA

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of the Bar Admission of Abby D. Padlock:**

**Abby D. Padlock,**

**Petitioner,**

**v.**

**Board of Bar Examiners,**

**Respondent.**

**FILED**

**JUN 29, 2021**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of the Board of Bar Examiners' decision. *Reversed and remanded.*

¶1 PER CURIAM. We review, pursuant to Supreme Court Rule (SCR) 40.08(7), the final decision of the Board of Bar Examiners (Board) declining to certify that the petitioner, Abby D. Padlock, has satisfied the character and fitness requirements for admission to the Wisconsin bar set forth in SCR 40.06(1). The Board's decision was based primarily on its conclusion that Ms. Padlock was deceptive in her law school application and in her bar application by underreporting, in a misleading manner, the details of an arrest that caused her to be charged with two

felony drug charges, which were later dismissed pursuant to a deferred prosecution agreement.

¶2 The initial duty to examine an applicant's qualifications for bar admission rests with the Board. In the final analysis, however, this court retains supervisory authority and has the ultimate responsibility for regulating admission to the Wisconsin bar. See In re Bar Admission of Rippl, 2002 WI 15, ¶3, 250 Wis. 2d 519, 639 N.W.2d 553, and In re Bar Admission of Vanderperren, 2003 WI 37, ¶2, 261 Wis. 2d 150, 661 N.W.2d 27. Here, although Ms. Padlock's disclosures raised significant questions about her fitness to practice law, we conclude that Ms. Padlock may be admitted to the practice of law in this state. Accordingly, we reverse and remand the matter to the Board for further proceedings.

¶3 Ms. Padlock was a high school athlete who played Division I volleyball in college and graduated with excellent grades. However, during and after college, sports injuries and serious family issues led to what she describes as a "dark time." When she was 24, Ms. Padlock wanted to work internationally as a language instructor. To acquire money for this venture she and a friend agreed to transport a substantial amount of marijuana across state lines as a means of raising cash.

¶4 In October 2015, Ms. Padlock and her friend left the State of Oregon with a shipment of marijuana in her car that they were attempting to deliver to Wisconsin. They were stopped by law enforcement officials in Minnesota. Her friend, who was

driving at the time, consented to a K9 search. Officers discovered seventy-six (76) individually sealed packages of marijuana, weighing approximately 114 pounds in the vehicle. They also found three cell phones, $473 in cash, assorted marijuana edibles, other marijuana, and drug paraphernalia. During a follow up search of Ms. Padlock's home, police found $30,120, which was later subject to civil forfeiture.

¶5   Ms. Padlock was arrested and charged in Minnesota with two felony counts of a controlled substance crime in the second degree. She was offered a deferred prosecution agreement; the felony charges were later reduced to one count of possession of marijuana in the third degree, a misdemeanor. She received a stay of adjudication, was sentenced to three days in jail, fined $1,000, and placed on probation for two years. When she successfully completed her probation, the charge was dismissed. Ms. Padlock had been paid approximately $30,000 for the attempted delivery; as noted, these funds were subject to a civil forfeiture.

¶6   After Ms. Padlock was sentenced, but before she had finished serving that sentence, she applied to the University of Wisconsin Law School.

¶7   Ms. Padlock's disclosures on her law school application form the first basis for the Board's decision to deny her admission to the Wisconsin bar. The law school application requires applicants to describe in detail any criminal infractions that occurred prior to admission. Applicants are directed to report instances in which they were

3

cited, arrested, charged, convicted, or sentenced to any criminal, civil, or ordinance violation at the federal, state, or local level. The application also requires applicants to answer whether or not the matter was resolved in a conviction, a dismissal, or was resolved at the same or a different level of seriousness as the original violation. Applicants must answer even if a finding of guilt or sentence was suspended or withheld, or if the record was expunged or sealed.

¶8 Ms. Padlock reported that she had been given a stay of adjudication and that the charges against her had been dismissed. This was inaccurate. The charges had not yet been dismissed at the time Ms. Padlock applied to law school. She was still on probation. Moreover, Ms. Padlock did not provide any other details about the 2015 criminal matter. She did not report the amount of marijuana that was discovered, the initial felony charges that she faced, any information about the $1,000 fine, her three days in jail, or her two years of probation. She did not mention the $30,000 civil forfeiture.

¶9 Ms. Padlock was admitted to the University of Wisconsin Law School and began her studies. It is not disputed that during law school, Ms. Padlock spoke openly about her conviction in class and with colleagues and faculty. At some point, Ms. Padlock received an offer to participate in a law school program that required a background check. During this background check, the law school learned the details of the underlying criminal offense and determined that Ms. Padlock had "seriously mischaracterized her 2015 criminal matter."

4

¶10 The law school revoked its employment offer and conducted an investigation. Ultimately, the law school imposed no discipline on Ms. Padlock and she was permitted to complete law school, although she was warned that this incident might adversely affect her admission to the bar.

¶11 In November 2019, as a third-year law student anticipating graduation, Ms. Padlock applied for admission to the Wisconsin State Bar under the diploma privilege, SCR 40.03. Ms. Padlock's disclosures on her bar application form the second basis for the Board's decision to deny her admission to the Wisconsin bar. In her bar application, Ms. Padlock reported that in October of 2015, she "drove from Oregon to Wisconsin with marijuana in [her] car." She reported that she was charged with possession of marijuana on December 14, 2015. She indicated that the final disposition of those charges was a stay of adjudication with an ultimate dismissal of the charges.

¶12 Following some inquiries by the Board that resulted in Ms. Padlock amending her bar application, the Board informed Ms. Padlock that her bar admission application was at risk of being denied on character and fitness grounds. SCR 40.08(1). Ms. Padlock formally contested the Board's preliminary adverse determination and requested a hearing before the Board.

¶13 The Board conducted an evidentiary hearing on September 11, 2020, via videoconference. Ms. Padlock testified about her history and her application materials. Professor Mary Prosser and Professor Greg Wiercioch, both faculty members at

the University of Wisconsin Law School, testified in support of Ms. Padlock's application.

¶14 The Board issued a written adverse decision and order on October 26, 2020. As relevant, the Board made the following findings about Ms. Padlock's law school application:

> 11. In her application for admission to the University of Wisconsin Law School, Ms. Padlock reported that she made a conscious choice to do something that she knew was wrong and illegal. She further reported that she was charged with possession of marijuana on December 14, 2015. She indicated that the final disposition of those charges was a stay of adjudication with an ultimate dismissal of the charges. Ms. Padlock did not provide any additional details about her arrest, including, for instance, the amount of marijuana that was discovered, the initial charges that she faced, or any information about the $30,000.00 forfeiture.

> 12. At the time Ms. Padlock made those statements to the University of Wisconsin Law School, her underlying criminal charges had not been dismissed.

> ***

> 15. Specifically and with regard to the 2015 criminal matter, Ms. Padlock failed to disclose on her law school application that she was initially charged with multiple counts of a controlled substances crime, that she accepted guilt for one count of a controlled substances crime, that she was sentenced on a count different than the original one and that it was resolved at a different level of seriousness, and that she omitted the details of her sentence including a $1000.00 fine, three days in jail, and two years of probation.

¶15 The Board made the following findings about her bar application and her credibility regarding her application disclosures:

> 18. In her application for admission to the Wisconsin bar Ms. Padlock reported that on October 27, 2015, she

6

"drove from Oregon to Wisconsin with marijuana in [her] car." She did not reveal that she had been transporting one hundred and fourteen (114) pounds of marijuana, nor did she indicate that she was originally charged with two counts of felony trafficking of controlled substances.

19. In her testimony before the Board, Ms. Padlock revealed that she had participated in another illegal drug delivery between Oregon and Wisconsin approximately two weeks prior to the October 27th incident. She reported being paid $10,000 for the earlier drug transaction. Ms. Padlock had not previously revealed that information to the Board or to the University of Wisconsin Law School.

***

24. By having repeatedly minimized her criminal conduct surrounding her illegal transportation of marijuana across state lines, Ms. Padlock demonstrated a lack of character and fitness that is essential for admission to the Wisconsin bar.

25. By engaging in repeated acts of misconduct, including one that she disclosed for the first time during her testimony before the Board, Ms. Padlock has not met her burden of establishing her honesty, diligence, or reliability.

26. Ms. Padlock has not demonstrated a sufficient effort towards or provided any significant evidence of rehabilitation.

27. By minimizing her criminal conduct in applying to the University of Wisconsin Law School and on her application for admission to the Wisconsin bar, Ms. Padlock was both dishonest and deceptive. Her explanations about each were neither plausible nor believable. Accordingly, the Board did not find Ms. Padlock to be a credible witness.

¶16 In its written decision the Board indicated that Ms. Padlock had failed to provide details about her arrest, including, for instance, the amount of marijuana that was discovered, the initial charges that she faced, or any

7

information about the $30,000 forfeiture. She did not disclose that she had been transporting 114 pounds of marijuana or that she was originally charged with two counts of felony trafficking of controlled substances. The Board found, further, that these omissions and incomplete disclosures were intentional. The Board also emphasized that during the hearing, in response to a question, Ms. Padlock disclosed that she had actually completed another illegal drug delivery between Oregon and Wisconsin approximately two weeks before the October 2015 incident and that she had been paid $10,000 for that drug transaction. Ms. Padlock had not previously revealed that information. The Board found that Ms. Padlock lacked credibility, that her omissions reflected an effort to deceive the law school and the Board, and that she had failed to establish good moral character and fitness to practice law in Wisconsin under SCR 40.06(1) and (3).

¶17 Ms. Padlock seeks review.[1] The crux of this appeal is whether Ms. Padlock has established that she has the requisite character and fitness for admission to the bar. When this court reviews an adverse determination of the Board pursuant to SCR 40.08(7), we adopt the Board's findings of fact if they are not clearly erroneous. In re Vanderperren, 261 Wis. 2d 150, ¶20. We then determine if the Board's conclusions of law based on those facts are proper. Id.

---

[1] The court has decided this matter based on the record and the written submissions of the parties. Neither party requested oral argument.

¶18 First, we observe that the Board properly declined to offer Ms. Padlock conditional admission under SCR 40.075. The character and fitness concerns that gave rise to the Board's adverse determination are not amenable to conditional admission. Only applicants who are able to demonstrate a record of documented, ongoing recovery and who are able to meet the competence and the character and fitness requirements may be considered for conditional admission under SCR 40.075. When an applicant appeals an adverse determination, this court may elect to impose post-admission conditions as a condition of admitting the applicant, but this is a distinct procedure from conditional admission under SCR 40.075. In re Bar Admission of Jarrett, 2016 WI 39, 368 Wis. 2d 567, 879 N.W.2d 116.

¶19 Next, Ms. Padlock contends that two of the Board's factual findings are clearly erroneous and should be rejected by this court. See In re Bar Admission of Rusch, 171 Wis. 2d 523, 528-29, 492 N.W.2d 153 (1992). She further contends that the Board's legal conclusion regarding her character is not supported by the record evidence, and is inconsistent with other decisions of this court. See Rippl, 250 Wis. 2d 519, ¶16; In re Bar Admission of Crowe, 141 Wis. 2d 230, 232, 414 N.W.2d 41 (1987). She suggests that the Board was biased against her and that she did not receive a fair hearing. From her perspective, the Board "has interpreted every word she spoke in the most negative light possible, ignoring some of the evidence favorable to her, and distorting the rest into the portrait of an incorrigible liar." She maintains that she has met her burden

of producing information sufficient to affirmatively demonstrate her present character and fitness and she asks this court to order her admission.  Alternatively, she suggests that she should be afforded admission with conditions.

¶20  The standards for evaluating an applicant's admission to the Wisconsin bar are well-settled.  Supreme Court Rule 40.06(1) requires that applicants for bar admission establish good moral character and fitness to practice law.  The burden rests with the applicant to establish character and fitness to the satisfaction of the Board.  See SCRs 40.06(3) and 40.07.  The Appendix to SCR ch. 40 contains the Board's rules that provide additional guidance to the Board and to applicants.

¶21  Bar Admission Rule (BA) 6.01 provides that "[a] lawyer should be one whose record of conduct justifies the trust of clients, adversaries, courts and others with respect to the professional duties owed to them."  That same section notes that "[a] record manifesting a deficiency in the honesty, diligence or reliability of an applicant may constitute a basis for denial of admission."

¶22  Bar Admission Rule 6.02 provides that in determining whether an applicant possesses the necessary character and fitness to practice law, 12 factors "should be treated as cause for further inquiry."  BA 6.02 (Relevant Conduct or Condition).  As relevant, these factors include a person's unlawful conduct, academic misconduct, false statements by the applicant, including concealment or nondisclosure, and acts involving dishonesty or misrepresentation.  See id.

10

¶23 Bar Admission Rule 6.03 provides that in assigning weight and significance to the applicant's prior conduct, the following factors are to be considered:

(a) the applicant's age at the time of the conduct;

(b) the recency of the conduct;

(c) the reliability of the information concerning the conduct;

(d) the seriousness of the conduct;

(e) the mitigating or aggravating circumstances;

(f) the evidence of rehabilitation;

(g) the applicant's candor in the admissions process;

(h) the materiality of any omissions or misrepresentations; and

(i) the number of incidents revealing deficiencies.

See SCR ch. 40 App., BA 6.03.

¶24 The Board states that its adverse decision is predicated on Ms. Padlock's alleged lack of candor in the application process, BA 6.03(g)-(h), not her underlying misconduct. It is not seriously disputed that the disclosures made on Ms. Padlock's law school application were insufficient. Ms. Padlock essentially concedes this as she admits that her application "set her up for trouble with the Law School." She maintains, however, that she did not intend to deceive the law school and she attributes the admitted shortcomings to having a "lay person's understanding of her legal position" at the time. Ms. Padlock's disclosures on her bar application were less problematic, but still appear to minimize her misconduct. So,

11

the critical question is whether Ms. Padlock's failure to make sufficiently detailed disclosures on her law school and bar applications reflects systematic evasion with an intent to deceive, or simply an error in judgment.

¶25 Our case law emphasizes the extreme importance of an applicant's candor with regard to prior misconduct as being as important as the underlying misconduct itself.  In In re Bar Admission of Gaylord, 155 Wis. 2d 816, 456 N.W.2d 590 (1990), we affirmed the Board's decision to deny an applicant admission where the applicant failed to disclose having been charged three times with criminal offenses including unlawful possession of a controlled substance with intent to sell, and the possession of a weapon without a permit.  Id. at 819.  We stated:

> It must be emphasized that the basis of the decision to decline certification of [the applicant's] character and fitness to practice law was not her conduct that led to the three criminal charges and the numerous traffic offenses. Rather, [the Board] determined that [the applicant] did not meet her burden to establish good moral character and fitness to practice law solely by virtue of the inaccuracies and omissions in her admission application.

Id. at 822.

¶26 Our analysis in bar admission cases typically begins with an assessment of the Board's factual findings, then proceeds to the de novo review of its legal conclusions.  Here, this is complicated, somewhat, by the fact that the Board's credibility determinations are intertwined with its legal conclusion that Ms. Padlock lacks the character and fitness to practice law.  We are generally disinclined to second-guess

12

credibility determinations made by factfinders. That said, we are charged with considering the record as a whole when we conduct our de novo review of the Board's legal conclusions. According, we review the evidence.

¶27 At the evidentiary hearing, Ms. Padlock acknowledged that her law school application does not explicitly identify the crime she was initially charged with, but points out that it "does reference consequences that bespeak felony penalties." She explains that from her perspective, it seemed as though everyone knew about her arrest. She repeatedly notes that anyone with access to the Internet has only to enter "Abby Padlock" in a search engine to get a detailed account of her arrest, complete with mugshot. She says that she assumed (wrongly, she now agrees) that law schools undertook their own investigations. She reasons that if she had been attempting to cover up her history, she would not have spoken about it openly with peers and professors, and would not have applied for a law school student mentoring program that she knew required a background check. She adds that the law school was ultimately satisfied by her explanations and concluded that there was no need to discipline her or take action against her. Ms. Padlock maintains her oversights were unintentional, that she was not dishonest, that the statements on her applications were not false, and that she wrote what she thought was required of her.

¶28 Ms. Padlock also offered, in addition to her own testimony, the character testimony of two of her academic supervisors. Both stated that Ms. Padlock had been forthcoming

13

about her past.  Professor Mary Prosser taught her small group class on criminal law, and later supervised Ms. Padlock in the Legal Assistance to Incarcerated People Project (LAIP). Professor Prosser spoke at length about Ms. Padlock's honesty, the fact that she did not shade the truth, the fact that she was forthcoming, her belief that Ms. Padlock had not intended to deceive the admissions department, and her conclusion that Ms. Padlock was a suitable candidate for admission to the bar.

¶29 Adjunct Professor Greg Wiercioch also worked closely with Ms. Padlock during her time in LAIP, and spoke about how Ms. Padlock led off her application to the program with a dramatic reference to her criminal case, stating:  "Facing a 50-year prison sentence can drastically change one's perspective on life.  Exactly one year, three weeks, and six days ago, I was in this exact predicament."  Professor Wiercioch stated he had no concerns about her character, her honesty or integrity, or in recommending her for admission to practice.

¶30 The Board's factual findings derive from Ms. Padlock's undisputed underlying criminal misconduct, the disclosures on her two applications, and from the Board members' credibility determinations based on the testimony and evidence adduced at the Board's hearing.

¶31 Ms. Padlock argues that the Board's factual finding regarding evidence of her rehabilitation is clearly erroneous. Specifically, the Board found that there was "a notable lack of evidence that Ms. Padlock had engaged in any significant rehabilitative efforts to offset her misdeeds."  The Board

14

stated that "Padlock has not demonstrated a sufficient effort toward or provided any significant evidence of rehabilitation." In its brief, the Board goes farther, claiming that Ms. Padlock has exhibited effectively no evidence of rehabilitation. This is an important challenge, as a number of our cases reflect the importance of "post-incident" rehabilitative conduct when we evaluate an applicant's character and fitness during an appeal from an adverse determination. See, e.g., In re Bar Admission of Anderson, 2006 WI 57, ¶26, 290 Wis. 2d 722, 715 N.W.2d 586 (holding that Anderson's post-incident conduct has reflected a record of good behavior and the establishment of the requisite character and fitness to be admitted to the Wisconsin bar). The Board's finding is not consistent with the record evidence.

¶32 The record reflects that Ms. Padlock provided services to incarcerated persons through the LAIP program, citing her own experience with the justice system as a reason for her involvement with the program. She hoped to become a mentor, publicly stating that that her experience fueled her desire to help people, a sentiment her professors confirmed. She joined a group of law students who went to Dilley, Texas, to provide legal assistance to women seeking asylum. She fundraised, organized, and led camps in Kenya staffed by UW students to help disadvantaged children build sustainable futures. She was asked to join the board of the nonprofit that ran the camps, and did so. She regularly volunteered to provide legal assistance to veterans at the Madison Veterans hospital. She started a small business seven months after graduating law school. Based on

15

these undisputed facts of record we conclude there is significant evidence of rehabilitation and we deem Finding 26 clear error.

¶33 Ms. Padlock next argues that the Board's factual finding that she was dishonest and deceptive in her applications is clearly erroneous. Finding 27 states:

> By minimizing her criminal conduct in applying to the University of Wisconsin Law School and on her application for admission to the Wisconsin bar, Ms. Padlock was both dishonest and deceptive. Her explanations about each were neither plausible nor believable. Accordingly, the Board did not find Ms. Padlock to be a credible witness.

¶34 Ms. Padlock faces an uphill battle with this challenge. The Board is brutally disparaging of her credibility, employing rhetoric that seems, at times, unnecessarily scathing. The Board condemns her "repeated and flagrant displays at minimizing and concealing her wrongful conduct." The Board says:

> Ms. Padlock has consistently neglected to acknowledge the seriousness and the breadth of her actions to any one body or institution.
>
> ***
>
> She selectively provides information about her criminal history in dribs and drabs without a complete accounting of the whole story, the whole picture, or the whole truth, to either the University of Wisconsin Law School or to the Board of Bar Examiners.
>
> ***
>
> Ms. Padlock lies by omission unless and until confronted by it as was the case during her hearing before the Board when she reported, for the first time, that she had been involved in a second illegal

16

drug smuggling operation to import a sizable amount of marijuana to Wisconsin from Oregon for which she supposedly received $10,000.

***

She has persistently and consistently demonstrated a lack of candor and seems not to have any real inkling about the importance of fully, completely, and wholly embracing the truth.

***

The Board did not find her testimony with regard to either claim to be credible or convincing. By repeatedly minimizing her criminal conduct surrounding the illegal transportation of drugs across state lines, the Board found that Ms. Padlock manifested a deficiency in honesty and integrity both of which are essential characteristics for admission to the bar in this state.

***

The Board has concluded that Ms. Padlock is unable to recognize and to understand what it means to be truthful, what constitutes a complete disclosure, or how to be forthright and argues that she cannot be expected to bring those essential skills to the table as a lawyer in this state.

***

The Board is not persuaded that she has been anything other than dishonest and deceptive.

¶35 One exchange at the hearing was clearly pivotal to the Board's determination that the shortcoming in Ms. Padlock's applications reflect a calculated effort to deceive the law school and the Board. In response to a direct question from a Board member, Ms. Padlock admitted that she had actually successfully made one cross-country marijuana delivery before she was caught, for which she was paid $10,000. For Ms.

17

Padlock, this admission evidences her "complete candor to the Board——she could have kept this fact to herself, and no one would have been the wiser." For the Board, this admission clearly shredded whatever tatters of credibility Ms. Padlock retained. The Board heavily faults Ms. Padlock for not previously disclosing this incident. The Board says "[h]er claim that she has never intentionally concealed her past is simply false as illustrated not only by her failure to include her first illegal drug transaction on her law school application but also on her application for admission to the bar."

¶36 We generally accord deference to a factfinder's credibility determinations because the factfinder has the opportunity to observe the witness' demeanor and gauge the testimony's persuasiveness. Here, the Board did not believe Ms. Padlock's explanations for her incomplete disclosures, and we are bound by that finding. However, the Board's disbelief of Ms. Padlock's reasons for her insufficient disclosures does not lead, inexorably, to the conclusion that she lacks the character and fitness to practice law. Were that the case, any effort to appeal an adverse determination predicated on credibility would be a fruitless endeavor.

¶37 In our view, the Board gives undue weight to Ms. Padlock's disclosure. Recall that the Board's stated basis for deeming her application at risk was Ms. Padlock's lack of candor on her applications – not her underlying criminal conduct itself. Those charges were dismissed. While in no way condoning her illegal activity, neither the law school

18

application nor the bar application requires an applicant to disclose behavior that was immoral or even unlawful, but that was never formally investigated or prosecuted. Such an expectation would be entirely subjective, would place the honest and forthright candidate at a disadvantage, and would be impossible to administer.

¶38 The Board then wholly discounted the character testimony of the two University of Wisconsin law professors who know and worked with Ms. Padlock personally. The Board faults them for apparently not knowing of her first drug delivery for which she was never apprehended, and for not affirmatively indicating they knew all the details of her underlying arrest and prosecution. The Board states that it "is unknown whether either knew about her first marijuana delivery for which she was never apprehended. Regardless, each supported her admission to the bar."

¶39 We find the Board's position in this regard somewhat troubling. Both professors had extensive direct contact with Ms. Padlock and both are longtime specialists in criminal law. Moreover, as Ms. Padlock points out, every member of the Board was given the opportunity, individually and by name, to ask them questions. The goal of this proceeding was to evaluate Ms. Padlock's character and fitness. It is perplexing that not a single member of the Board asked a question of these character witnesses. It is somewhat concerning that these witnesses were then discredited for failing to answer questions that were never asked of them.

19

¶40 Moreover, the record before us reflects that each professor did more than merely "allude to having some awareness" of Ms. Padlock's crime. Professor Prosser described the letter she wrote on Ms. Padlock's behalf to the court, seeking to terminate her probation, and she stated that Ms. Padlock was completely forthcoming about her situation. Professor Wiercioch testified that his first introduction to Ms. Padlock was her cover letter that led with an admission of her criminal charge. He testified that she was up-front about her history, which they discussed at length. The record confirms that both witnesses had definite knowledge of Ms. Padlock's criminal case, and believed that she was honest and forthcoming about it. Rather, it seems these professors could not overcome the Board's antipathy for Ms. Padlock.

¶41 This court has, on several occasions, certified applicants to the bar despite an adverse determination from the Board. Ms. Padlock points to In re Jarrett, 368 Wis. 2d 567. Mr. Jarrett was admitted to practice law with conditions after several incidents of demonstrated academic misconduct in law school. Mr. Jarrett, unlike Ms. Padlock, was completely forthcoming about his academic misconduct throughout the application process, although he failed to disclose several speeding tickets. Neither the Board nor the court were persuaded by his explanation for doing so, but this court determined that the omission regarding the tickets was insufficient to preclude his admission.

20

¶42 Also relevant to our analysis is In re Vanderperren, 261 Wis. 2d 150, where the Board's refusal to certify Ms. Vanderperren was based primarily on her "less than forthright and complete responses" to questions on her application for admission to Hamline University School of Law, and on her subsequent Wisconsin bar application. Her underlying issues were not criminal, but involved a series of alcohol-related incidents, obnoxious behavior, and argumentative run-ins with police and university authorities. The Vanderperren case reflects the importance of post-conduct rehabilitation because, by the time this court considered her bar application, Ms. Vanderperren had been admitted to practice law in Minnesota, had passed the Wisconsin bar exam, had voluntarily corrected her bar application, and several years had elapsed since her last reported incident involving excessive alcohol consumption. Vanderperren, 261 Wis. 2d 150, ¶65; see also Rippl, 250 Wis. 2d 519, ¶3. She had undergone an AODA evaluation and had attended AA meetings and changed her drinking habits. Accordingly, this court opted to admit her to the practice of law.

¶43 Ms. Padlock reminds the court that here, more than six years have elapsed since her criminal misconduct. We have determined there is evidence of her rehabilitation on this record and we accord more weight to the testimony of her faculty supervisors than did the Board, and less weight to her disclosure of information that – while unsavory – she was not required to disclose.

21

¶44 This was not an easy case. Ms. Padlock would have done better to be exceedingly forthcoming on her law school and her bar applications. That said, we have concluded that the shortcomings in her applications are not sufficient to preclude her admission to the bar in light of the record as a whole. Denying Ms. Padlock admission to the bar because of the shortcomings, even factoring in the Board's perception that she minimized her misconduct, is simply too harsh a penalty under the circumstances presented. Her goal of becoming a lawyer has already been delayed, and her prospect of obtaining bar admission has been uncertain. Her own actions - and the manner in which she disclosed them - have caused her significant obstacles, embarrassment, and had financial consequences. The language of a much cited concurrence written by Justice Prosser is apt here. He observed:

> All in all, I believe the applicant deserves the benefit of the doubt. She should have the opportunity to begin the practice law with a clean slate-with the understanding of the importance that courts attach to character and ethics and a warning that this court has a long memory.

Vanderperren, 261 Wis. 2d 150, ¶65. We again choose to exercise our prerogative and afford this applicant the benefit of the doubt.

¶45 Accordingly, we reverse the Board's conclusion of law regarding Ms. Padlock's character and fitness to practice law, and we direct the Board to certify Ms. Padlock's admission to practice law in Wisconsin and her enrollment with the State Bar of Wisconsin pursuant to SCR 10.03(2). The Board did not

22

identify any conditions that should be imposed on Ms. Padlock in the event we elected to admit her, and we impose no conditions upon her practice of law.

¶46  IT IS ORDERED that the decision of the Board of Bar Examiners declining to certify that Abby D. Padlock has satisfied the requirements for admission to the practice of law in Wisconsin is reversed and the matter is remanded to the Board for further action consistent with this order.

¶47  IT IS FURTHER ORDERED that the documents submitted under seal are deemed confidential and shall remain under seal until further order of the court.

¶48 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting).* I would affirm the final decision of the Board of Bar Examiners (Board) declining to certify Abby Padlock's character and fitness for admission to the Wisconsin bar. The Board found that Ms. Padlock underreported, in a misleading manner, the details of a 2015 interstate drug trafficking incident that caused her to be charged in Minnesota with two felony counts of a Controlled Substance Crime in the Second Degree. I agree.

¶49 The inadequacy of the disclosures on her law school application later caused the law school to determine that Ms. Padlock had "seriously mischaracterized her 2015 criminal matter." In fact, she was paid $10,000 to illegally transport drugs cross country before being caught. With respect to the underreported charges, Ms. Padlock failed to report the amount of marijuana that was discovered: 114 pounds. She failed to report that she faced felony charges. She failed to report that she spent three days in jail, or that she was subject to a $30,000 civil forfeiture. She inaccurately claimed that the charges against her had already been dismissed when, in fact, she was still on probation at the time she applied to law school.

¶50 Ms. Padlock was warned that the insufficient disclosures on her law school application might adversely affect her admission to the bar. Nonetheless, Ms. Padlock again underreported her criminal conduct in her application seeking bar admission.

1

¶51 Ms. Padlock's inadequate disclosures reflect dishonest and deceptive behavior, which demonstrates that Ms. Padlock has acted in a manner that is not honest, diligent, or reliable. Coupled with the Board's finding that Ms. Padlock was not credible nor convincing at the evidentiary hearing before the Board, I conclude that there are simply too many incidents in which, despite being previously warned, Ms. Padlock considered candid disclosure optional.

¶52 Our cases emphasize the extreme importance of an applicant's candor with regard to prior misconduct as being as, if not more, important as the underlying misconduct itself. See, e.g., In re Bar Admission of Gaylord, 155 Wis. 2d 816, 819, 456 N.W.2d 590 (1990) (affirming the Board's decision to deny certification of bar applicant where the applicant failed to disclose having been charged three times with criminal offenses). The applicant in Gaylord did not meet her burden to establish good moral character and fitness to practice law due to the inaccuracies and omissions in her admission application. Id. at 822. I conclude the same is true of Ms. Padlock. By repeatedly minimizing her criminal conduct surrounding the illegal transportation of drugs across state lines, Ms. Padlock manifested a deficiency in honesty and integrity, both of which are essential characteristics for admission to the bar in this state.

¶53 Based on the record before this court, I am not persuaded that Ms. Padlock has yet demonstrated the requisite moral character and fitness "needed to assure to a reasonable

2

degree of certainty the integrity and the competence of services performed for clients and the maintenance of high standards in the administration of justice." SCR 40.06. I would affirm the Board's decision.

¶54 For the foregoing reasons, I respectfully dissent.

¶55 I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and BRIAN HAGEDORN join this dissent.

3